[No. C065068. Third Dist. Nov. 22, 2011.]

FRIENDS OF SHINGLE SPRINGS INTERCHANGE, INC., Plaintiff and Appellant, v.
COUNTY OF EL DORADO, Defendant and Respondent;
CONVENIENCE RETAILERS, LLC, Real Party in Interest and Respondent.

1472

**1474**

---

## COUNSEL

Gabrielli Law Office and John C. Gabrielli for Plaintiff and Appellant.

Scharff, Brady & Vinding and Michael V. Brady for Defendant and Respondent.

Law Offices of Gregory D. Thatch and Larry C. Larsen for Real Party in Interest and Respondent.

---

## OPINION

**MURRAY, J.**—Appellant Friends of Shingle Springs Interchange, Inc. (FSSI), filed a verified petition for writ of mandate (the petition) challenging the certification and approval by the County of El Dorado, through its board of supervisors (County), of a Circle K minimart and gas station complex off Highway 50 in Shingle Springs. At the time FSSI filed its petition, its corporate powers had been suspended for some two and a half years. Real party in interest Convenience Retailers, LLC (CRL), joined by the County (collectively, respondents) demurred to the petition, asserting that FSSI did not have the legal capacity to file the petition and that FSSI's corporate powers were not revived until after the applicable statutes of limitations had run. The trial court sustained the demurrer without leave to amend and dismissed the petition.

On appeal, FSSI contends (1) the existence of unresolved factual disputes rendered dismissal of the petition by demurrer improper, (2) it was error to sustain the demurrer because FSSI substantially complied with the corporate suspension and revivor statutes prior to expiration of the relevant statutes of limitations, and (3) the trial court abused its discretion when it denied leave to amend the petition to allege substantial compliance.

We hold that a demurrer was an appropriate vehicle to challenge the petition, that FSSI cannot allege substantial compliance with the suspension and revivor statutes to avoid the short limitations periods in the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) and the Planning and Zoning Law (Gov. Code, § 65000 et seq.), and that the trial court did not abuse its discretion in denying leave to amend the petition. We affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Project

This litigation involves the construction of a Circle K convenience store and gas station adjacent to Highway 50 at the Shingle Springs interchange near Placerville (the project). FSSI challenged approval of the project, asserting three causes of action in its petition: the first for violations of the California Environmental Quality Act (CEQA);[1] the second for violations of the Planning and Zoning Law;[2] and the third for "violating the traffic safety provisions" of a County regulation. Essentially, FSSI complained that the site is too small for the proposed use, that the driveways are unsafe because of the traffic that will result from the project, and that the County failed to consider the traffic impacts that would result from the project.

### B. FSSI's Corporate Status

At the hearing on the demurrer, FSSI submitted to the trial court the declaration of Kelly Rasco, "secretary, bookkeeper, office assistant" and the custodian of records of FSSI.[3] Attached as an exhibit to the Rasco declaration and incorporated by reference was a timeline of events. At the hearing on the demurrer, counsel for FSSI referred to events set forth in the declaration and timeline. As FSSI hoped, the trial court read and considered the declaration. We include events from the Rasco declaration in our chronology. These events are relevant to the claim of substantial compliance and therefore have a bearing on whether FSSI could amend its petition to state facts sufficient to defeat the statute of limitations bar.

FSSI filed its articles of incorporation with the Secretary of State (SOS) on May 14, 2002. The original articles state, among other things, that FSSI is a "nonprofit public benefit corporation . . . not organized for the private gain of any person."

According to the Rasco timeline, FSSI received a request from the Franchise Tax Board (FTB) dated February 28, 2006, for past due taxes. Rasco did not specify in her timeline the amount that was past due.[4] On

---

[1] Public Resources Code section 21000 et seq.

[2] Government Code section 65000 et seq.

[3] While Rasco describes herself as a secretary, bookkeeper, and office assistant in her declaration, her title as noted in the amended articles of incorporation, discussed *post*, is "Corporate Secretary."

[4] As will be seen later, there are a number of ambiguities in the Rasco timeline. One should be noted here. It is not clear whether the dates listed relative to certain documents referenced in the Rasco timeline represent the date FSSI received the document or the date on which the

March 14, 2006, FSSI sent the FTB a letter "in response to [FTB's] 02-28-06 request for past due taxes." Rasco did not state what response FSSI actually provided in its letter. FSSI received a reply from the FTB dated July 31, 2006, "citing need for 'Limitations of Powers' clause in Articles of Incorporation." On August 4, 2006, FSSI sent the "information" that was requested by the FTB on July 31, 2006. FSSI received a letter from the FTB dated September 27, 2006, "requesting additional information." Rasco did not state what information was requested.

FSSI subsequently received a notice of pending suspension and penalty assessment from the SOS dated November 2, 2006, for failure to file a statement of information. Based on Rasco's statement that the notice related to FSSI's failure to file a statement of information, we assume the notice referenced a pending suspension pursuant to Corporations Code section 2205 or section 5008.6.[5] Thereafter, FSSI received a notice of balance due from the FTB dated November 15, 2006. According to the Rasco timeline, the notice read, "[T]he corporation continues to be delinquent in filing the statement(s) required by statute," and reflected a balance due of $50 for previously

document was created or mailed. For example, reference to the February 28, 2006 document reads as follows on the Rasco timeline: "3. 02-28-06—CA Franchise Tax Board (FTB) Request For Past Due California Corporate Franchise or Income Tax." Elsewhere in the timeline, Rasco used the word "received" to indicate when something was received by FSSI. Accordingly, we assume Rasco intended other dates associated with documents to be the date of the document and not the date it was received by FSSI.

[5] Corporations Code section 2205 provides:

"(a) A corporation that (1) fails to file a statement pursuant to Section 1502 for an applicable filing period, (2) has not filed a statement pursuant to Section 1502 during the preceding 24 months, and (3) was certified for penalty pursuant to Section 2204 for the same filing period, is subject to suspension pursuant to this section rather than to penalty pursuant to Section 2204.

"(b) When subdivision (a) is applicable, the Secretary of State shall mail a notice to the corporation informing the corporation that its corporate powers, rights, and privileges will be suspended after 60 days if it fails to file a statement pursuant to Section 1502.

"(c) After the expiration of the 60-day period without any statement filed pursuant to Section 1502, the Secretary of State shall notify the Franchise Tax Board of the suspension and mail a notice of the suspension to the corporation, and *thereupon, the corporate powers, rights, and privileges of the corporation are suspended*, except for the purpose of filing an application for exempt status or amending the articles of incorporation as necessary either to perfect that application or to set forth a new name.

"(d) A statement pursuant to Section 1502 may be filed notwithstanding suspension of the corporate powers, rights, and privileges pursuant to this section or Section 23301, 23301.5, or 23775 of the Revenue and Taxation Code. Upon the filing of a statement pursuant to Section 1502 by a corporation that has suffered suspension pursuant to this section, the Secretary of State shall certify that fact to the Franchise Tax Board and the corporation may thereupon be relieved from suspension unless the corporation is held in suspension by the Franchise Tax Board by reason of Section 23301, 23301.5, or 23775 of the Revenue and Taxation Code." (Italics added.)

Corporations Code section 5008.6 applies to nonprofit corporations. It provides:

"(a) A corporation that (1) fails to file a statement pursuant to Section 6210, 8210, or 9660 for an applicable filing period, (2) has not filed a statement pursuant to Section 6210, 8210, or

assessed penalties, plus an additional balance due of $1,404.25 (consisting of $800 in taxes, $456.36 in penalties/fees, and $147.89 in interest). Rasco stated the notice indicated FSSI could obtain "relief from the SOS suspension '. . . by filing the required statements(s).' " The notice further read, "This is our final notice requesting you immediately pay the balance due and file all past due returns noted above. We scheduled this entity for suspension or forfeiture on 03/01/07 because you have not filed tax returns or paid an amount due on behalf of the above entity under Revenue and Taxation Code Sections 23301, and 23301.5. If your entity is exempt, it may be subject to revocation under Section 23775 . . . ."

On January 5, 2007, FSSI sent a letter to the FTB "requesting additional time to supply various documents previously requested & previously submitted" and advising the FTB that dissolution of the corporation was under consideration. Rasco did not identify the specific documents for which FSSI was requesting time to produce.

FSSI subsequently received a final notice before suspension from the FTB dated December 22, 2006, and reflecting a balance due of $1,362.70. The summary of account balance attached to the notice actually reflected a balance due of $1,404.25, as previously noted.

---

9660 during the preceding 24 months, and (3) was certified for penalty pursuant to Section 6810, 8810, or 9690 for the same filing period, shall be subject to suspension pursuant to this section rather than to penalty under Section 6810 or 8810.

"(b) When subdivision (a) is applicable, the Secretary of State shall mail a notice to the corporation informing the corporation that its corporate powers, rights, and privileges will be suspended 60 days from the date of the notice if the corporation does not file the statement required by Section 6210, 8210, or 9660.

"(c) If the 60-day period expires without the delinquent corporation filing the required statement, the Secretary of State shall notify the Franchise Tax Board of the suspension, and mail a notice of the suspension to the corporation. Thereupon, except for the purpose of filing an application for exempt status or amending the articles of incorporation as necessary either to perfect that application or to set forth a new name, *the corporate powers, rights, and privileges of the corporation are suspended.*

"(d) A statement required by Section 6210, 8210, or 9660 may be filed, notwithstanding suspension of the corporate powers, rights, and privileges under this section or under provisions of the Revenue and Taxation Code. Upon the filing of a statement under Section 6210, 8210, or 9660, by a corporation that has suffered suspension under this section, the Secretary of State shall certify that fact to the Franchise Tax Board and the corporation may thereupon be relieved from suspension, unless the corporation is held in suspension by the Franchise Tax Board because of Section 23301, 23301.5, or 23775 of the Revenue and Taxation Code." (Italics added.)

On February 1, 2007, the SOS suspended FSSI's corporate powers for failure to file a statement of information. On March 1, 2007, the FTB suspended FSSI's corporate powers for failure to file tax returns and pay amounts due and owing.[6]

There are no specific events listed on the Rasco timeline between March 28, 2007, and January 17, 2008. However, Rasco stated that FSSI considered "dissolv[ing]" or "abandoning" the corporation beginning in early 2007 and into early 2008. During this time, FSSI sent various documents to the FTB concerning "abandonment" or "dissolution" of the corporation and, in fact, on January 17, 2008, FSSI sent the FTB a registered letter and form requesting abandonment of the corporation but received no response. Over a period of months following the January 17 letter, FSSI "changed [its] mind[]" about abandoning the corporation and ultimately made a decision to revive the corporation. The Rasco timeline reflects that Rasco spoke with a person at the FTB in early December 2008 regarding "taking necessary steps to revive [FSSI]." However, it was not until January 26, 2009, that FSSI sent to the FTB the form 3557 Application for Certificate of Revivor. According to the Rasco timeline, "several calls" inquiring about the progress of FSSI's application were made to a person at the FTB between February and August of 2009. None of the calls were returned. Rasco did not state how many phone calls were made or the dates on which they were made. On August 13, 2009, a person associated with FSSI (from the timeline, it appears it could have been Rasco) spoke to the person at the FTB that FSSI had been trying to reach and was advised to resend the application material previously submitted. On August 14, 2009, FSSI sent the FTB an account of corporate activities, an FTB form 3500 Exemption Application, and a check for the filing fees. Rasco did not expressly state in either her declaration or the timeline that a request for exemption had been made prior to this date; nor did she state a check for filing fees had been submitted prior to this date.[7] On August 31, 2009, a corporate officer of FSSI hand delivered to the FTB what Rasco called "another FTB Application package." On that same day, the same corporate officer went to the SOS and filed a statement of information.

---

[6] CRL and the County jointly request that this court take judicial notice of the certificate of status issued by the SOS on November 4, 2009, which reflects the suspensions issued by the SOS on November 4, 2009 (exhibit B to request). The same request was made and granted in the trial court. We also grant the request pursuant to Evidence Code sections 452, subdivision (c), and 459.

[7] There is a notation referencing a request for exemption in the timeline. It reads, "04/18/06—Exemption Application (FTB form 3500) showing corp's receipt for $25.00 fee paid, but otherwise blank." Given Rasco's statement in her declaration about the difficulty in locating documents in the corporate files, we read this entry on the timeline as an indication there was a corporation receipt (not a receipt from the FTB) and a blank tax exemption form in the corporate files.

The SOS sent FSSI a letter dated September 1, 2009, which reads in part, "The required statement [of information] has recently been received and filed by the Secretary of State." The letter further stated, "[O]ur records indicate that the [FTB] has also suspended/forfeited the corporation. Pursuant to California Corporations Code Section 2205(d) or 5008.6, the corporation will remain suspended/forfeited until the [FTB] issues a Certificate of Revivor. To obtain a Certificate of Revivor, it will be necessary to complete the enclosed Application for Certificate of Revivor (FTB 3557 form) and submit: [¶]—a completed FTB 3557 form, and [¶]—a copy of this letter [¶] together, to the [FTB]. Questions regarding the [FTB] revivor requirements should be directed to the [FTB] . . . ." Rasco did not state the date FSSI actually received this letter.

On September 2, 2009, FSSI filed its petition challenging certification and approval of the project. FSSI alleged that the environmental impact report (EIR) for the project was approved and certified by the County at a public hearing on August 4, 2009, and that a CEQA notice of determination was filed on that same date. As discussed *post*, this date triggered the applicable statutes of limitations.

According to the Rasco timeline, FSSI submitted another application package to the FTB on September 8, 2009. This package included the "initial and current Statement of Information and Application." While the September 1, 2009 letter from the SOS indicated the application to the FTB must include a copy of that letter, Rasco did not specifically state in her declaration or timeline that a copy of this letter was included.

Also on September 8, 2009, FSSI electronically filed with the SOS "another Statement of Information dated 09/08/09." On September 9, 2009, FSSI faxed a "Relief From Suspension form" to the FTB and on September 10, 2009, FSSI faxed "additional info[rmation]" to the FTB. Rasco did not indicate the nature of the "additional info[rmation]." On September 18, 2009, FSSI faxed the FTB an "[a]pplication package with the Relief From Suspension & Application for Certificate of Revivor forms previously submitted to FTB numerous times, in addition to Statement of Purpose and copy of By Laws." Nowhere in the timeline or the declaration does Rasco state that the statement of purpose and bylaws had previously been submitted to the FTB.

Rasco stated that FSSI faxed articles of incorporation to the FTB on September 22, 2009. On September 28, 2009, FSSI "[r]eceived" a fax from the FTB "requesting missing clause in Articles of Incorporation for an Amendment of Nonprofit, with sample Articles to add."

On October 8, 2009, FSSI filed a Certificate of Amendment of Articles of Incorporation with the SOS.[8] According to Rasco, FSSI faxed and mailed to the FTB "Endorsed Articles of Incorporation" on October 19, 2009. Although not expressly stated, we infer that this submission included the October 8, 2009 amendment. No explanation was given for the delay between the filing of the amended articles with the SOS on October 8 and the mailing to the FTB on October 19.

According to the certificate of status issued by the SOS on November 4, 2009, FSSI's corporate status was still "suspended" as of that date.

In a letter dated November 9, 2009, the FTB informed FSSI that it was "exempt from California franchise or income tax," and that its tax-exempt status was "effective as of 05/14/2002."

A subsequent notice from the FTB dated November 24, 2009, informed FSSI that it had been relieved of suspension or forfeiture and that it was in good standing with the FTB effective November 4, 2009.

### C. Respondents' Demurrer and the Trial Court's Ruling

Respondents demurred to the petition, arguing FSSI lacked the capacity to sue because its corporate status was suspended in 2007 and remained so as of November 4, 2009. Since FSSI did not have the capacity to sue when it filed its petition on September 2, 2009, each cause of action in the petition failed

---

[8] CRL and the County jointly request that this court take judicial notice of FSSI's Certificate of Amendment of Articles of Incorporation filed October 8, 2009 (exhibit A to request). We grant the request pursuant to Evidence Code sections 452, subdivision (c), and 459.

The photocopy of the amendment provided to this court is poor. As near as we can make out, the certificate of amendment reads as follows:

"CERTIFICATE OF AMENDMENT OF ARTICLES OF INCORPORATION

"The undersigned certify that:

"1. They are the president and the secretary, respectively, of

"Friends of Shingle Springs Interchange #2415056

"2. Article 3 of the Articles of Incorporation of the corporation is amended to add—Article 3(e) to read as follows: [¶] Article 3(e)—This corporation is organized and operated exclusively for social welfare purposes within the meaning of IRC Section 501(c)(4).

"3. The foregoing amendment[] of Articles of Incorporation has been duly approved by the board of directors.

"4. The foregoing amendment[] of Articles of Incorporation has been duly approved by the required vote of the members.

"We further declare under penalty of perjury under the laws of the State of California that the matters set forth in this certificate are true and correct of our own knowledge [*sic*]."

The certificate was dated October 8, 2009, and signed by "James R. Kidder, President" and "Kelly Rasco, Secretary."

to state facts sufficient to constitute a cause of action in that the CEQA challenge was barred by the 30-day statute of limitations set forth in Public Resources Code section 21167, subdivision (c),[9] and the project challenges grounded on the Planning and Zoning Law and County regulations were barred by the 90-day statute of limitations set forth in Government Code section 65009, "subdivision (c)(5) [*sic*]."[10]

FSSI responded that it had substantially complied with corporate suspension and revivor statutes prior to the running of the applicable statutes of limitations. FSSI also argued it was entitled to amend the petition to substitute in its place another petitioner with standing, in which case the amended petition would relate back to the filing date of the original petition.

The trial court found that the dates alleged in the petition showed that the 30-day statute of limitations applicable to the first cause of action ran on September 3, 2009, and the 90-day limitations period applicable to the second and third causes of action ran on November 2, 2009. After taking judicial notice of the fact that FSSI's corporate powers were suspended by the SOS on February 1, 2007, and by the FTB on March 1, 2007, that the FTB's determination of FSSI's tax-exempt status was issued on November 9, 2009, and that the certificate of revivor was not issued until November 24, 2009, with a retroactive effective date of November 4, 2009, the trial court further found there was "no evidence before the court to establish that [FSSI's efforts to substantially comply] were completed prior to the expiration of the 30[-]day statute of limitation[s] applicable to the CEQA issues on September 3, 2009 and prior to the expiration of the 90[-]day statute of limitation[s] applicable to the remaining issues on November 2, 2009." Thus, the trial court concluded that FSSI's petition was barred by the applicable statutes of limitations.

The trial court also concluded that it lacked discretion to allow amendment of the petition to substitute another party with capacity to sue to avoid the statute of limitations defense. The trial court correctly ruled that it could not allow an amendment to substitute a party when the substitution would negate a statute of limitations defense. (*Sade Shoe Co. v. Oschin & Snyder* (1990) 217

---

[9] Public Resources Code section 21167 provides, in pertinent part: "An action or proceeding to attack, review, set aside, void, or annul the following acts or decisions of a public agency on the grounds of noncompliance with this division shall be commenced as follows: [¶] . . . [¶] (c) An action or proceeding alleging that an environmental impact report does not comply with this division shall be commenced within 30 days from the date of the filing of the notice required by subdivision (a) of Section 21108 or subdivision (a) of Section 21152 by the lead agency."

[10] The appropriate statutory reference for this statute of limitations is Government Code section 65009, subdivision (c)(1), which provides that such actions must be "commenced and service . . . made on the legislative body within 90 days after the legislative body's decision."

Cal.App.3d 1509, 1516–1517 [266 Cal.Rptr. 619] (*Sade Shoe*).) FSSI does not challenge this ruling on appeal.

The trial court sustained the demurrer without leave to amend and entered judgment dismissing the petition. FSSI filed a timely notice of appeal.[11]

## DISCUSSION

### I. Dismissal of the Petition by Demurrer Is Proper

FSSI contends a demurrer is improper where there are unresolved factual issues, such as whether or when FSSI filed the SOS and FTB forms required to obtain a certificate of revivor. FSSI further contends that the presence of those disputed factual issues precludes judicial notice from being taken of FSSI's suspension, thereby precluding use of a demurrer as a vehicle for dismissal of the petition on the ground that the applicable statutes of limitations have run. We disagree.

"When any ground for objection to a complaint . . . appears on the face thereof, or from any matter of which the court is required to or may take judicial notice, the objection on that ground may be taken by a demurrer to the pleading." (Code Civ. Proc., § 430.30, subd. (a).)

██ A party against whom a petition has been filed may object by demurrer to the pleading on various grounds, including that "[t]he person who filed the pleading does not have the legal capacity to sue." (Code Civ. Proc., § 430.10, subd. (b).) ██ A suspended corporation does not have the legal capacity to sue. (Corp. Code, §§ 2205, subd. (c), 5008.6, subd. (c); *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 217 [39 Cal.Rptr.3d 33] (*Kaufman & Broad*); *Sade Shoe, supra,* 217 Cal.App.3d at p. 1512.)

██ A party may also object by demurrer on the ground that "[t]he pleading does not state facts sufficient to constitute a cause of action," including that the claims are barred by the applicable statutes of limitations. (Code Civ. Proc., § 430.10, subd. (e); *Bell v. Bank of California* (1908) 153 Cal. 234, 245 [94 P. 889].) "When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper. [Citations.]" (*Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 86 [96 Cal.Rptr.2d 383].)

---

[11] On October 8, 2010, FSSI filed a petition for writ of supersedeas or other stay order. This court denied the petition.

Where a demurrer has been sustained without leave to amend, we review the complaint "de novo to determine whether the allegations of facts are sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose. [Citation.]" (*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 349 [76 Cal.Rptr.3d 146].)

The causes of action in FSSI's petition allege facts clearly identifying the applicable 30-day and 90-day statutes of limitations. The petition alleges that August 4, 2009, was the date the County approved the project, certified the EIR, and filed the CEQA notice of determination. Thus, both statutes started running on August 4, 2009. The 30-day statute of limitations applicable to the CEQA challenge therefore expired on September 3, 2009. (Pub. Resources Code, § 21167, subd. (c); *Deltakeeper v. Oakdale Irrigation Dist.* (2001) 94 Cal.App.4th 1092, 1098 [115 Cal.Rptr.2d 244].) The 90-day limitations period applicable to the project challenges expired on November 2, 2009. (Gov. Code, § 65009, subd. (c)(1); *Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1119 [23 Cal.Rptr.3d 282] (*Royalty Carpet*).) The applicable statutes of limitations and the calculation of the running of the two statutes are not in dispute here.

What is in dispute is FSSI's corporate status at all relevant times. Respondents argued in their demurrer that FSSI's corporate powers were suspended at the time FSSI filed the petition and remained suspended thereafter until after the applicable limitations periods expired. Because the petition, on its face, is not completely illuminating in that regard, like the trial court, we must determine whether grounds for respondents' argument appear "from any matter of which the court is required to or may take judicial notice." (Code Civ. Proc., § 430.30, subd. (a).)

Respondents properly requested in their demurrer that the trial court take judicial notice of the SOS's certificate of status issued on November 4, 2009. That document reflects the dates on which FSSI's corporate powers were suspended by the SOS and the FTB, as well as the fact that FSSI's corporate status was "suspended" as of November 4, 2009. In its opposition to the demurrer, FSSI included a request for judicial notice of four documents: FSSI's articles of incorporation filed May 14, 2002; a letter dated September 1, 2009, from the SOS to FSSI acknowledging receipt of a statement of information; the certificate of revivor issued by the FTB on November 24, 2009 (showing an effective date of Nov. 4, 2009); and a letter dated November 9, 2009, from the FTB to FSSI reflecting a determination of FSSI's tax-exempt status "effective as of [May 14, 2002]."

The trial court took judicial notice of all of those matters, with the exception of FSSI's original articles of incorporation. Those documents are

relevant to the issues to be decided and are properly the subject of judicial notice as documents reflecting official acts of the executive department of the State of California.[12] (Evid. Code, § 452, subd. (c); *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1098 [95 Cal.Rptr.2d 779] ["relevant matters that are properly the subject of judicial notice may be treated as having been pled"]; *Childs v. State of California* (1983) 144 Cal.App.3d 155, 162 [192 Cal.Rptr. 526] ["resolutions, reports and other official acts of the state may be judicially noticed for the purpose of ruling upon a demurrer"].) Indeed, this court has previously taken judicial notice of a certificate of corporate status. (See *Waltrip v. Kimberlin* (2008) 164 Cal.App.4th 517, 522, fn. 2 [79 Cal.Rptr.3d 460].)

█ FSSI urges that judicial notice is unavailable because a dispute exists regarding its efforts to file the documentation and information required by the FTB and the SOS. FSSI points out that judicial notice may be taken "only in those instances where *there is not or cannot be a factual dispute on the matter noticed.*" (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 948, p. 363, some italics added.) As an example, FSSI contends that a factual dispute existed regarding whether and when it filed revivor applications. FSSI's contention lacks merit. Whether and when FSSI filed revivor applications are disputed facts outside the matters noticed. The fact that there may be disputed facts outside the matters noticed does not preclude a court from taking judicial notice of documents containing undisputed facts.

The matters judicially noticed here show that FSSI's corporate status was suspended by the SOS and the FTB in 2007; that, as of September 9, 2009, the SOS would consider the corporation suspended until the FTB issued a certificate of revivor; that, on November 9, 2009, FSSI was declared tax exempt, effective as of May 14, 2002; and that, on November 24, 2009, the FTB determined that FSSI was relieved of suspension and in good standing effective November 4, 2009. FSSI does not and cannot dispute these matters.

The demurrer was not improper and as we will discuss, the trial court's ruling that FSSI's petition was barred by the applicable statutes of limitations was not erroneous.

## II. Appellate Review of Trial Court Ruling Sustaining Demurrer Without Leave to Amend

FSSI contends it can cure the statute of limitations defect by alleging facts that establish substantial compliance. FSSI further contends the trial court

---

[12] Although none of the parties on appeal requested that we take judicial notice of the original articles of incorporation, which were part of the record on appeal, we take judicial notice of the existence of the original articles on our own motion. (Evid. Code, §§ 452, subd. (h), 459.)

abused its discretion in sustaining the demurrer and in denying leave to amend to allege those facts. " 'On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, the appellant "has the burden to show either [that] the demurrer was sustained erroneously or that to sustain the demurrer without leave to amend constitutes an abuse of discretion." [Citation.]' " (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 866 [76 Cal.Rptr.3d 325].) "[A] reviewing court must defer to the trial court's ruling [sustaining a demurrer without leave to amend] unless the appellant demonstrates 'a manifest abuse of discretion.' [Citation.]" (*Id.* at p. 867.) The trial court abuses its discretion " 'if there is a reasonable possibility [that] the defect in the complaint can be cured by amendment.' [Citation.]" (*Ibid.*) While FSSI did not expressly request the trial court to grant leave to amend, the trial court's order denying leave to amend is reviewable. (Code Civ. Proc., § 472c, subd. (a); *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 412 [75 Cal.Rptr.2d 257].) However, the burden is on the plaintiff to establish a reasonable possibility it could state a valid cause of action. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569]; *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737] ["Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading."]; *Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 959 [93 Cal.Rptr.2d 413].) Thus, it is FSSI's burden to clearly and unambiguously set forth all the facts necessary to show it can cure the statute of limitations defect.

## III. Substantial Compliance with Revivor Statutes

### A. The Substantial Compliance Doctrine

FSSI contends its corporate powers were restored as a result of its substantial compliance with the revivor statutes prior to expiration of the applicable limitations periods. FSSI asserts that the following establish substantial compliance: its filing of statements of information required by the SOS, its filing of FTB form 3557 applications required by the FTB, and the fact that the FTB ultimately "waived" any claim of money owed for back taxes, penalties, and interest. FSSI urges that the FTB and the SOS both received the full measure of protection intended by the Legislature under the statutory scheme; that is, the SOS obtained the information statement prior to expiration of the applicable limitations periods, and the FTB eventually received confirmation that FSSI was tax exempt.

Respondents argue that a statute of limitations defense is substantive rather than procedural and, as such, revival of previously suspended corporate powers does not toll the running of the applicable statutes of limitations.

(*Benton v. County of Napa* (1991) 226 Cal.App.3d 1485, 1491 [277 Cal.Rptr. 541] (*Benton*).) In particular, respondents argue that FSSI cannot amend its petition to show substantial compliance because it cannot allege that it paid all taxes, interest, and penalties prior to expiration of the limitations periods or that it made timely application for relief.

For reasons we shall explain, we agree that FSSI cannot allege substantial compliance.

■ A corporation that fails to pay its taxes, or fails to file a required return, or fails to file the required statement of information may be suspended and its corporate powers will be forfeited while under suspension. (Rev. & Tax. Code, §§ 23301, 23301.5;[13] Corp. Code, §§ 2205, 5008.6.[14]) In cases involving the suspension of a corporation as a result of the failure to pay taxes and fees (Rev. & Tax. Code, § 23301), courts have consistently held that while the corporation's powers are suspended, it lacks standing to sue and statutes of limitations are not tolled. (*Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1304–1305 [87 Cal.Rptr.2d 358]; *Benton, supra,* 226 Cal.App.3d at p. 1491; *Sade Shoe, supra,* 217 Cal.App.3d at pp. 1512–1513; *ABA Recovery Services, Inc. v. Konold* (1988) 198 Cal.App.3d 720, 724–725 [244 Cal.Rptr. 27] (*ABA Recovery*).) The same rule applies when a corporation fails to file the required statement of information. (*Leasequip, Inc. v Dapeer* (2002) 103 Cal.App.4th 394, 402–403 [126 Cal.Rptr.2d 782] (*Leasequip*).)

■ Once the delinquent corporation has satisfied its obligations, its powers are restored, thus reviving its capacity to sue and defend. (*Kaufman & Broad, supra,* 136 Cal.App.4th at pp. 217–218.) However, "revival is 'without prejudice to any . . . defense . . . which has accrued by reason of the

---

[13] Revenue and Taxation Code section 23305 provides: "Any taxpayer which has suffered the suspension or forfeiture provided for in Section 23301 or 23301.5 may be relieved therefrom upon making application therefor in writing to the Franchise Tax Board and upon the filing of all tax returns required under this part, and the payment of the tax, additions to tax, penalties, interest, and any other amounts for nonpayment of which the suspension or forfeiture occurred, together with all other taxes, additions to tax, penalties, interest, and any other amounts due under this part, and upon the issuance by the Franchise Tax Board of a certificate of revivor. Application for the certificate on behalf of any taxpayer which has suffered suspension or forfeiture may be made by any stockholder or creditor, by a majority of the surviving trustees or directors thereof, by an officer, or by any other person who has interest in the relief from suspension or forfeiture."

Revenue and Taxation Code section 23301.5 provides: "Except for the purposes of filing an application for exempt status or amending the articles of incorporation as necessary either to perfect that application or to set forth a new name, the corporate powers, rights, and privileges of a domestic taxpayer may be suspended, and the exercise of the corporate powers, rights, and privileges of a foreign taxpayer in this state may be forfeited, if a taxpayer fails to file a tax return required by this part."

[14] See footnote 5, *ante.*

original suspension . . . .' (Rev. & Tax. Code, §§ 23305, 23305a; *ABA Recovery*[, *supra*,] 198 Cal.App.3d [at p.] 724 . . . ; *Electronic Equipment Express, Inc.* v. *Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 843 [176 Cal.Rptr. 239].) Thus, a suit filed by the corporation while its powers were suspended does not toll the statute of limitations. The suit is ineffective because of the suspension, so the statute continues to run. [Citations.]" (*American Alternative Energy Partners II* v. *Windridge, Inc.* (1996) 42 Cal.App.4th 551, 563 [49 Cal.Rptr.2d 686].)

" 'If the statute of limitations runs out prior to revival of a corporation's powers, the corporation's actions will be time barred even if the complaint would otherwise have been timely. [Citations.]' " (*Leasequip, supra*, 103 Cal.App.4th at p. 403, quoting *Sade Shoe, supra*, 217 Cal.App.3d at p. 1513.)

Both parties rely on *Sade Shoe, supra*, 217 Cal.App.3d 1509 to support their positions. The application of the substantial compliance doctrine in the context of corporate suspension and revivor statutes presented itself as an issue of first impression in *Sade Shoe*. (*Sade Shoe, supra*, 217 Cal.App.3d at p. 1514.)

In *Sade Shoe*, causes of action for interference with prospective business advantage and interference with contractual relations accrued before Sade Shoe's corporate status was suspended. The corporation was thereafter suspended for failure to file tax returns, pay taxes, and file a domestic stock statement. (*Sade Shoe, supra*, 217 Cal.App.3d at p. 1511.) The corporation subsequently filed its tax return, paid its taxes and filed a domestic stock statement. Later the corporation filed its complaint. However, at the time the complaint was filed, the corporation continued to owe the state $90.85 in penalties and interest, and the applicable statute of limitations expired before Sade Shoe obtained a certificate of revivor. (*Ibid.*) The trial court granted the defendant's motion for summary judgment on the grounds that the limitations period had expired during Sade Shoe's corporate suspension. (*Id.* at pp. 1511–1512.)

On appeal, Sade Shoe argued it substantially complied with the requirements of the revivor statutes prior to expiration of the limitations period. The court agreed that "substantial compliance may restore a corporation's powers to sue and defend itself . . . ." (*Sade Shoe, supra*, 217 Cal.App.3d at p. 1512.) The court analogized the corporate suspension and revivor statutes to the licensed contractor statute in Business and Professions Code section 7031, subdivision (a) and adopted the reasoning from *Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564] (*Latipac*). Our high court in *Latipac* applied the substantial compliance doctrine to allow Latipac, Incorporated, a suspended corporate contractor, to maintain an action for

breach of contract.[15] The contractor possessed a valid contractor's license at the time the parties executed the contract but failed to submit a renewal application and pay the required renewal fee, and the license expired while the contractor was performing under the contract. The contractor renewed its license approximately two months after completing the job. Nothing in the record suggested that the corporate contractor's failure to make timely application for renewal of its license was the result of concern the renewal would be denied. It was a simple office oversight. When the contractor submitted its application and renewal fee, the renewal was "routinely" processed "without further examination." (*Latipac, supra,* at pp. 280–281.)

The court in *Latipac* noted that the test for substantial compliance is "whether the contractor's 'substantial compliance with the licensing requirements satisfies the policy of the statute.' [Citation.]" (*Latipac, supra,* 64 Cal.2d at p. 281.) "[T]he statute was intended to enforce the general provisions of the Contractors License Law (Bus. & Prof. Code, § 7000 et seq.), which was created to protect the public against incompetent workmanship." (*Sade Shoe, supra,* 217 Cal.App.3d at p. 1514.) The high court in *Latipac* reasoned that Business and Professions Code section 7031 should not be applied to bar an action when the party seeking to avoid his obligations under the contract has received the full protection of the statute. (*Latipac, supra,* 64 Cal.2d at pp. 279–280.) The key moment of time when the existence of the license becomes determinative is the time when the other party to the agreement decides whether the contractor possesses the requisite responsibility and competence and whether to enter into a contractual relationship. (*Id.* at p. 282.) The plaintiff had held a valid license for some five years prior to the time the parties entered into the contract and, indeed, held it for 17 months after execution of the contract. (*Ibid.*) The legislative goal of the statute had been met.

Applying the *Latipac* reasoning in the context of a corporation suspended for failure to pay penalties and interest, the court in *Sade Shoe* noted that

---

[15] Business and Professions Code section 7031 has been amended by the Legislature several times since its enactment. The Legislature has narrowed the substantial compliance doctrine in the context of unlicensed contractors. Subdivision (e) of section 7031, added after *Latipac,* currently provides: "The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state. However, notwithstanding subdivision (b) of Section 143, the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, (3) did not know or reasonably should not have known that he or she was not duly licensed when performance of the act or contract commenced, and (4) acted promptly and in good faith to reinstate his or her license upon learning it was invalid."

Revenue and Taxation Code section 23301 is "intended to compel compliance with certain legislative goals by removing a party's ability to commence an action until compliance has been met. [Citations.] [T]he Legislature seeks to pressure delinquent corporations to pay their taxes by prohibiting them from acting as ongoing concerns until the taxes, plus any penalties and fines, have been paid. [Citations.]" (*Sade Shoe, supra,* 217 Cal.App.3d at p. 1515.) "This legislative goal is not furthered by strictly applying the enforcement statute to bar an action where the legislative goal was satisfied by substantial compliance. Indeed, courts have consistently viewed 'a corporation's tax delinquencies, *after correction*, as mere irregularities.' [Citations.]" (*Ibid.*)

The court in *Sade Shoe* noted an additional reason for applying the substantial compliance doctrine. It reasoned that "the plea of corporate suspension . . . is considered a plea of abatement. [Citations.] Pleas of abatement are not favored by law and should be strictly construed. [Citation.] Since the defense of corporate suspension is disfavored, it is logical it should not be strictly applied where the corporate party has substantially complied with the requirements necessary for its revivor." (*Sade Shoe, supra,* 217 Cal.App.3d at p. 1515.)

While recognizing the potential applicability of the substantial compliance doctrine, the court nevertheless concluded that Sade Shoe had not substantially complied. Given that substantial compliance is a level of compliance that "satisfies the policy of the statute" (*Sade Shoe, supra,* 217 Cal.App.3d at p. 1515), the court concluded that Sade Shoe's failure to pay the $90.85 for outstanding penalties and interest precluded application of the substantial compliance doctrine. The court reasoned that allowing Sade Shoe to proceed with its lawsuit without paying the entire balance would defeat the legislative goal of pressuring corporations to pay money owed the state. (*Id.* at p. 1516.) "In sum, when a corporation continues to owe money to the state, either for taxes, interest or penalties, there can be no substantial compliance." (*Ibid.*)

Relying on *Sade Shoe,* FSSI would have us find that its efforts to obtain corporate revivor by filing FTB form 3557 applications, statements of information, and other documentation before the applicable limitations periods expired constituted substantial compliance. It contends that we must find substantial compliance because both governmental agencies received the full protection intended by the revivor statutes. That is, the SOS obtained the information statement it required prior to expiration of the 30-day limitations period and the FTB, having waived any right it might have had to money owed for delinquent taxes, received the confirmation it needed that FSSI was indeed tax exempt. We are not persuaded.

## B. The Substantial Compliance Doctrine in CEQA and Planning and Zoning Law Litigation

At our invitation, the parties filed supplemental briefs on an issue that had not been addressed in their original briefing, but upon which the resolution of the case turns—Should the doctrine of substantial compliance with corporate suspension and revivor statutes apply in CEQA and Planning and Zoning Law challenges to avoid the statutes of limitations for such actions? This is a case of first impression.

■ While the reasoning in *Sade Shoe* might be sound in the context of other cases, that reasoning does not have the same force in the context of land use litigation. We hold that the substantial compliance doctrine cannot be used by a suspended corporation to defeat the short statutes of limitations in actions involving CEQA or the Planning and Zoning Law.[16]

Allowing a suspended corporation to find refuge in the substantial compliance doctrine based merely on having filed revivor applications and other documentation would be inconsistent with the policy reasons underlying the short limitations periods associated with CEQA and Planning and Zoning Law challenges. "Courts have often noted the Legislature's clear determination that ' "the public interest is not served unless CEQA challenges are promptly filed and diligently prosecuted." ' " (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 500 [106 Cal.Rptr.3d 858, 227 P.3d 416] (*Sensible Planning*); see *Citizens for a Megaplex-Free Alameda v. City of Alameda* (2007) 149 Cal.App.4th 91, 111 [56 Cal.Rptr.3d 728]; *Board of Supervisors v. Superior Court* (1994) 23 Cal.App.4th 830, 836 [28 Cal.Rptr.2d 560] (*Board of Supervisors*); *Oceanside Marina Towers Assn. v. Oceanside Community Development Com.* (1986) 187 Cal.App.3d 735, 741 [231 Cal.Rptr. 910].)

"To ensure finality and predictability in public land use planning decisions, statutes of limitations governing challenges to such decisions are typically short. [Citations.] The limitations periods set forth in CEQA adhere to this pattern; indeed, as the CEQA Guidelines themselves assert, 'CEQA provides *unusually short* statutes of limitations on filing court challenges to the approval of projects under the act.' (CEQA Guidelines, § 15112, subd. (a),

---

[16] We, of course, realize that the trial court did not sustain the demurrer without leave to amend on this ground. However, on appeal, we review the ultimate correctness of the trial court's ruling. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145 [112 Cal.Rptr.3d 746, 235 P.3d 62].) "[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." (*Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

italics added.) As the CEQA Guidelines further explain, '[t]he statute of limitations periods are not public review periods or waiting periods for the person whose project has been approved. The project sponsor may proceed to carry out the project as soon as the necessary permits have been granted. The statute of limitations cuts off the right of another person to file a court action challenging approval of the project after the specified time period has expired.' (CEQA Guidelines, § 15112, subd. (b).) [¶] CEQA's purpose to ensure extremely prompt resolution of lawsuits claiming noncompliance with the Act is evidenced throughout the statute's procedural scheme. Such suits have calendar preference; more populous counties must designate one or more judges to develop CEQA expertise so as to permit prompt disposition of CEQA claims; and expedited briefing and hearing schedules are required. ([Pub. Resources Code, ]§§ 21167.1, 21167.4.) [¶] . . . 'Patently, there is legislative concern that CEQA challenges, with their obvious potential for financial prejudice and disruption, must not be permitted to drag on to the potential serious injury of the real party in interest.' (*Board of Supervisors, supra*, at p. 837.)" (*Sensible Planning, supra*, 48 Cal.4th at pp. 499–500; accord, *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 50–51 [105 Cal.Rptr.3d 181, 224 P.3d 920] [Pub. Resources Code, § 21167 serves the key policy of prompt resolution of and promotion of certainty regarding land use decisions].)

The policy underlying the Planning and Zoning Law statute of limitations is codified in Government Code section 65009, subdivision (a)(2) and (3): "(2) The Legislature . . . finds and declares that a legal action or proceeding challenging a decision of a city, county, or city and county has a chilling effect on the confidence with which property owners and local governments can proceed with projects. Legal actions or proceedings filed to attack, review, set aside, void, or annul a decision of a city, county, or city and county pursuant to this division . . . can prevent the completion of needed developments even though the projects have received required governmental approvals. [¶] (3) The purpose of this section is to provide certainty for property owners and local governments regarding decisions made pursuant to this division." Courts have acknowledged this legislative policy. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 27 [32 Cal.Rptr.2d 244, 876 P.2d 1043] [the shortened limitation periods for land use planning decisions promote sound fiscal planning by state and local governmental entities]; *Royalty Carpet, supra*, 125 Cal.App.4th at p. 1121 ["The legislative policy behind both Government Code section 65009 and CEQA is the prompt resolution of challenges to the decisions of public agencies regarding land use."].)

In the face of clear legislative policy underlying the CEQA and Planning and Zoning Law statutes of limitations, FSSI asks us to apply the substantial

compliance doctrine—a judicially created doctrine grounded on the notion that the defense of corporate suspension is a plea in abatement and pleas in abatement are disfavored.

FSSI's corporate powers were suspended in early 2007. Between 2007 and early 2008, FSSI actually contemplated abandoning its corporate status and made inquiries on how to achieve that end. At some point, a decision was made to revive the corporation, but FSSI did not begin formal efforts to do so until January 2009.

FSSI eventually received notification from the FTB that it was tax exempt effective May 14, 2002, and that it was in good standing and its corporate powers were no longer suspended effective November 4, 2009. However, neither determination was made until after the expiration of the applicable statutes of limitations. And during the process, it was not at all clear that the corporation would be revived.

■ This case illustrates how application of the substantial compliance doctrine to defeat the shortened statutes of limitations in land use actions would frustrate the legislative purpose underlying those statutes. There is no certainty or finality in the mere filing of revivor application documentation and, consequently, the policy considerations underlying the short limitations periods for CEQA and Planning and Zoning Law challenges must militate against the application of the substantial compliance doctrine. Were we to hold otherwise, property owners, developers, and public agencies might be forced into one of two predicaments the Legislature sought to prevent. They might be required to delay a project for some undefined period of time while a suspended corporation seeks a certificate of revivor—a certificate that might not be forthcoming if the corporation's application proves inadequate or that may be forthcoming only after an indefinite period of time. Alternatively, project sponsors could proceed with their project, but without the confidence of avoiding a potential challenge—a level of confidence deemed desirable by the Legislature. We decline to create such a result. Application of the substantial compliance doctrine would be inconsistent with the legislative policy underlying the short land use limitations periods, and we hold that the legislative policy must trump the judicial policy disfavoring pleas of abatement. Courts defer to the legislative branch in matters of public policy. (*Sanchez v. County of San Bernardino* (2009) 176 Cal.App.4th 516, 527 [98 Cal.Rptr.3d 96].)

FSSI argues that the substantial compliance doctrine must apply to CEQA cases because CEQA's "foremost" policy for maximum environmental protection (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 390 [253 Cal.Rptr. 426, 764 P.2d 278])

must "override[]" the "lesser" policy of expedited litigation. Both policies were important to the Legislature, and there is no indication the Legislature contemplated courts would balance one policy against the other. Besides, the competition here is between legislative policy and judicial doctrine and legislative policy must prevail.

Indeed, even where competing statutes are at issue, the policy of expedited litigation may prevail. *Nacimiento Regional Water Management Advisory Com. v. Monterey County Water Resources Agency* (2004) 122 Cal.App.4th 961 [18 Cal.Rptr.3d 921] (*Nacimiento*)—cited without discussion in FSSI's supplemental brief—supports our conclusion that the substantial compliance doctrine does not apply to CEQA cases. The court in *Nacimiento* held the mandatory statutory relief from dismissal for inexcusable attorney neglect (Code Civ. Proc., § 473) does not apply to a dismissal for failure to make a timely request for a CEQA hearing under Public Resources Code section 21167.4. The court reasoned that "[a]pplication of section 473(b)'s mandatory relief provision to CEQA dismissals for failing to request a hearing within the prescribed 90-day time period would undermine CEQA's design for expedited litigation." (*Nacimiento, supra*, 122 Cal.App.4th at p. 968.)

■ Other cases support our conclusion as well. In *Maginn v. City of Glendale* (1999) 72 Cal.App.4th 1102 [85 Cal.Rptr.2d 639] (*Maginn*), the court affirmed dismissal of an action under the Subdivision Map Act (Gov. Code, § 66410 et seq.) where the plaintiffs served the complaint and summons two days later than required by Government Code section 66499.37.[17] The court rejected the plaintiffs' invocation of the substantial compliance doctrine. In doing so, the court observed, "[t]he rule of narrowly interpreting statutes of limitation [citation] does not apply when the statute is unambiguous and reflects a policy judgment by the Legislature . . . that litigation . . . must be resolved as quickly as possible consistent with due process." (*Maginn, supra*, 72 Cal.App.4th at pp. 1109–1110, citation omitted.)

In *Wagner v. City of South Pasadena* (2000) 78 Cal.App.4th 943 [93 Cal.Rptr.2d 91], a Planning and Zoning Law case, the court, citing *Maginn*,

---

[17] Government Code section 66499.37 provides: "Any action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a subdivision, or of any of the proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto, including, but not limited to, the approval of a tentative map or final map, *shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision.* Thereafter all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the decision or of the proceedings, acts, or determinations. The proceeding shall take precedence over all matters of the calendar of the court except criminal, probate, eminent domain, forcible entry, and unlawful detainer proceedings." (Italics added.)

concluded that the doctrine of substantial compliance did not apply to save a pleading served after the 90-day period in Government Code section 65009, subdivision (c)(1). (*Wagner, supra,* 78 Cal.App.4th at p. 950.) The court reasoned, "the need for timeliness and certainty influenced the Legislature in devising the statutory scheme of Government Code section 65000. Accordingly, the *statute mandates strict compliance with the statute of limitations and service periods.*" (*Ibid.,* italics added.)

Though not relied upon by FSSI, we note *Nacimiento, supra,* 122 Cal.App.4th at page 966, in dictum, cited case law holding that the *discretionary* statutory relief from dismissal for *excusable* mistake (Code Civ. Proc., § 473) applies to CEQA cases. (*Miller v. City of Hermosa Beach* (1993) 13 Cal.App.4th 1118, 1135–1138 [17 Cal.Rptr.2d 408]; *McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352, 359 [243 Cal.Rptr. 617].) We do not read *Miller* and *McCormick* as support for FSSI, because the relief at issue in those cases was based on a *statute* that allows discretionary relief, whereas here FSSI invokes the *judicial* doctrine of substantial compliance. As we stated, *ante,* legislative policy trumps judicial doctrine.

FSSI cites *Board of Supervisors, supra,* 23 Cal.App.4th at pages 837 to 839, which held that strict compliance with the time requirements for service of a CEQA petition under Public Resources Code section 21167.6 may be excused for good cause, where the statute did not expressly require dismissal for failure to comply. (See also *Royalty Carpet, supra,* 125 Cal.App.4th at pp. 1121–1124 [same].) However, FSSI acknowledges *Board of Supervisors* is not on point because it addressed noncompliance with a *procedural* requirement (service) (*Board of Supervisors, supra,* at pp. 837–838), whereas the failure timely to file the litigation within the statute of limitations has been held (in the context of corporate suspension) to be a *substantive* defense that is not prejudiced by subsequent corporate revivor (*Benton, supra,* 226 Cal.App.3d at pp. 1490–1491; 2 Schwing, Cal. Affirmative Defenses (2011 ed.) § 39:38, p. 971).

 FSSI also argues the policy of expedited litigation should not apply here because "there has been no prejudice to trigger it," since the real party in interest has gone forward with construction despite the litigation. However, FSSI misperceives the matter. A defendant need not show prejudice to invoke the statutes of limitations.

FSSI also argues it is unfair to dismiss the lawsuit based on actions not of FSSI's doing, such as respondents filing what FSSI characterizes as a "highly questionable if not completely improper" demurrer and going forward with construction during pendency of the appeal. However, as we have noted, the

demurrer was appropriate and so was the dismissal. Furthermore, the dismissal is due to FSSI's own failure to maintain its corporate status, actions clearly attributable to FSSI.

■ FSSI, in its appellate briefing and again at oral argument, argues the perceived merits of its challenge to the project. Whatever the merits may or may not have been is not relevant here. As our high court has noted, "A statute of limitations ' "necessarily fix[es]" a "definite period[] of time" [citation], and hence operates conclusively across-the-board. It does so with respect to *all* causes of action, both those that do not have merit and also those that do. [Citation.] That it may bar meritorious causes of action as well as unmeritorious ones is the "price of the orderly and timely processing of litigation" [citation]—a price that may be high, but one that must nevertheless be paid.' " (*Sensible Planning, supra,* 48 Cal.4th at p. 499.)

■ The judicial policy of not strictly applying the corporate suspension defense when a corporation has substantially complied with the requirements necessary for its revivor must give way to the land use statutes of limitations designed to further clear legislative policy. We conclude the substantial compliance doctrine regarding corporate revivor does not apply in litigation grounded on CEQA and the Planning and Zoning Law.

### C. FSSI Cannot Establish Substantial Compliance

Even if the substantial compliance doctrine should apply in the context of CEQA or Planning and Zoning Law actions, FSSI cannot establish that it substantially complied with the revivor statutes. Accordingly, the trial court did not abuse its discretion and, on our independent review, we determine FSSI cannot set forth facts sufficient to establish substantial compliance.

It is undisputed that at the time FSSI filed its petition there was an outstanding bill for taxes, penalties and interest, and that bill remained in effect until after the last applicable limitations period expired on November 2, 2009. Under *Sade Shoe,* there can be no substantial compliance where any outstanding financial obligations remain unpaid. (*Sade Shoe, supra,* 217 Cal.App.3d at pp. 1512–1513.) To preclude expiration of the applicable statutes of limitations, FSSI would have to allege payment of these monies. Until it was deemed qualified for exemption, FSSI was obligated to pay the taxes, penalties and interest noticed in 2006. (Rev. & Tax. Code, § 23151,

subd. (a).)[18] FSSI continued to owe taxes, penalties and interest when the applicable statutes of limitations expired. No amendment to the petition can cure this defect.

FSSI contends that the lack of additional demands by the FTB for money owed constituted a waiver of debt. More specifically, FSSI urges that, because the FTB "never pursued" the claim and instead "requested or accepted and processed FSSI's applications for a certificate of revivor (FTB form 3775), and an exemption form (FTB form 3500)," the FTB waived any claim for money owed and, in effect, established "that the debt was invalid and unenforceable." This argument is untenable. FSSI acknowledged receipt of two demands from the FTB for payment of delinquent taxes, penalties, and interest, one dated November 15, 2006, and the other dated December 22, 2006. FSSI acknowledged that it "never . . . paid any franchise or income taxes." In an effort to gain compliance, the FTB did what it was statutorily authorized to do—it suspended FSSI. No statute requires repeated demands for payment, and we decline to require such demands. The FTB need only provide the notice required by statute. We reject FSSI's waiver claim.

FSSI also argues its retroactive tax-exempt status "trump[s]" the rule in *Sade Shoe* that there can be no substantial compliance if a corporation "continues to owe money to the state." (*Sade Shoe, supra*, 217 Cal.App.3d at p. 1516.) Essentially, FSSI would have us create an exception to the rule in *Sade Shoe* where the FTB determines a corporation qualifies for tax-exempt status after the statute of limitations runs. In support, FSSI relies on the language of Revenue and Taxation Code section 23701, subdivision (a), arguing that, "subject to certain specified terms and conditions, '[o]rganizations which are organized and operated for nonprofit . . . are exempt from taxes.' " However, the specified terms and conditions not specifically identified by FSSI are critical to the analysis here. That is, a nonprofit organization is tax exempt *if* an application for exemption is submitted on the appropriate form to the FTB, the appropriate filing fee is paid, *and the FTB issues a determination exempting the organization from tax.* (Rev. & Tax. Code, § 23701, subds. (a)–(c).) In other words, the organization is technically not tax exempt unless and until the forms are submitted, the fee paid, and the determination issued by the FTB. Here, the FTB's tax-exempt determination was not issued until *after* expiration of the applicable limitations periods.

---

[18] Revenue and Taxation Code section 23151, subdivision (a) provides: "With the exception of banks and financial corporations, every corporation doing business within the limits of this state and *not expressly exempted* from taxation by the provisions of the Constitution of this state or by this part, shall annually pay to the state, for the privilege of exercising its corporate franchises within this state, a tax according to or measured by its net income, to be computed at the rate of 7.6 percent upon the basis of its net income for the next preceding income year, or if greater, the minimum tax specified in Section 23153." (Italics added.)

As FSSI points out, Revenue and Taxation Code section 23701 provides that "[t]his section shall not prevent a determination from having retroactive effect . . . ." However, we read that language to mean that, once a tax-exempt determination is made, the organization cannot be made to pay taxes for the period during which it is determined to have been exempt therefrom. We do not, as FSSI would have us do, read that language to render meaningless the date the tax-exempt determination was made for purposes of the statutes of limitations, especially since FSSI has failed to establish that the FTB had all the information it needed to make that determination prior to the running of the limitations periods.

Indeed, the Rasco declaration and timeline establish that FSSI's documentary submittals were lacking and more was required. In stark contrast with *Latipac*, FSSI's application was not "routinely" processed "without further examination." (*Latipac, supra*, 64 Cal.2d at p. 280.)

While it is true that the SOS acknowledged receipt of FSSI's statement of information on September 1, 2009, two days prior to expiration of the CEQA statute of limitations, the SOS made clear that FSSI's corporate status was still suspended given that the FTB had yet to issue a certificate of revivor. There was more that FSSI needed to do before a certificate of revivor could be obtained.

There were many documents FSSI submitted after the CEQA statute of limitations expired on September 3, 2009. FSSI faxed what it called "another" statement of information to the SOS on September 8, 2009. FSSI provided no information to the trial court or to this court explaining why there was a need to send the SOS "another" copy of the statement of information the SOS had acknowledged receiving on September 1, 2009. Of course, there would have been no reason to submit "another" copy, but there would have been a need to submit a "current" statement if information had changed. We note that according to Rasco, FSSI submitted both the "initial" and a "current" statement of information to the FTB on September 8, 2009.

On September 9, 2009, FSSI faxed a "Relief From Suspension form" to the FTB. On September 22, 2009, FSSI faxed articles of incorporation to the FTB. Based on the FTB's September 28, 2009 request for what Rasco called a "missing clause" in the articles of incorporation, it is evident the FTB needed still more to process FSSI's request before it could determine FSSI qualified for tax exemption. FSSI's certificate of amendment of articles of incorporation was not filed with the SOS until October 8, 2009, over one month after the expiration of the CEQA 30-day statute of limitations. FSSI's proffer indicates the amended articles were not delivered to the FTB until October 19, 2009.

Thereafter, on November 9, 2009, the FTB issued its determination that FSSI was tax exempt effective as of the date of its initial incorporation. On November 24, 2009, the FTB issued its determination to lift FSSI's suspension and place it in good standing effective November 4, 2009. The effective date indicates there was not the compliance the FTB required until November 4, 2009, two days after the statutes of limitations expired for the challenges grounded on the Planning and Zoning Law and County regulations. FSSI cannot establish substantial compliance prior to the expiration of the applicable limitations periods.

## DISPOSITION

The trial court did not abuse its discretion in sustaining the demurrer and denying FSSI leave to amend. The judgment of dismissal is affirmed. FSSI shall pay the costs of appeal of the County of El Dorado and Convenience Retailers, LLC. (See Cal. Rules of Court, rule 8.278(a)(1) & (2).)

Raye, P. J., and Butz, J., concurred.