[No. G043598. Fourth Dist., Div. Three. Aug. 10, 2011.]

RUDY CORRALES et al., Plaintiffs and Respondents, v. RICHARD CORRALES, Defendant and Appellant.

Counsel

Carroll & Werner and David B. Carroll for Defendant and Appellant.

Peter L. Recchia for Plaintiffs and Respondents.

Opinion

**BEDSWORTH, Acting P. J.—**

## INTRODUCTION

The parties to this appeal, a partnership dispute, agree on one issue. They want us to assume a partnership can consist of one person. Having carefully

studied the idea of a one-partner partnership in light of the Revised Uniform Partnership Act, we conclude that no such animal exists. If a partnership consists of only two persons, the partnership dissolves by operation of law when one of them departs.

The trial judge in this case had a truly unenviable task before him as he pondered his decision. He found none of the key witnesses credible and had virtually no independent corroboration on which to rely. He was confronted with partnership books and records kept, not by GAAP (generally accepted accounting principles), but by "winging it." He probably developed severe neck pain from constantly shaking his head over the way the participants ran their business.

The parties have now brought this matter to us, and we have reluctantly concluded it has to go back to the long-suffering judge. The case was tried for the most part on a completely erroneous theory. Both parties seem to have proceeded on their assumption of the vitality of a one-person partnership, which we conclude cannot exist under California law. Since that assumption underlies the monetary portion of the judgment,[1] we remand to allow the application of the correct dissolution procedure.

## FACTS

The brothers Corrales, Rudy and Richard, formed RC Electronics (RCE) in 1989, according to a written partnership agreement with an indefinite term.[2] RCE repaired, refurbished, and sold computer tape drives. The brothers agreed that Rudy would be responsible for running the business, while Richard would supply financing and business know-how. Richard already had a thriving business occupying him full time; he became involved in RCE because Rudy could not obtain enough financing on his own to start a business.

Rudy's wife, Pamela, came on board shortly after RCE started up; she became the office manager and was responsible for preparing the company's business records. Their two daughters also worked for RCE.

The business was quite successful for several years, and Rudy and Richard realized substantial sums from it. In 2004, however, Richard discovered that Rudy, Pamela, and their daughters had formed a competing business, PK Electronics (PKE), to perform the same services performed by RCE, but

---

[1] We requested additional briefing from the parties on this subject, which they have provided.

[2] As the trial court observed, the partners then proceeded to ignore the agreement. The copy submitted as an exhibit at trial is not signed.

without Richard.[3] When Richard inquired about PKE, Rudy refused to tell him anything and cut off all communication with him.

Richard sent Rudy a "Notice of Dissociation," dated April 12, 2005, in which he stated that he was withdrawing from the partnership. Richard and Rudy sued each other in 2006 in separate lawsuits. Richard sued Rudy, Pamela, the two daughters, PKE, and RCE for breach of contract, breach of fiduciary duty, fraud, conspiracy, misappropriation of trade secrets, and accounting. Rudy sued Richard for breach of contract, common counts, fraud, negligent misrepresentation, breach of fiduciary duty, and "Cal. Corp. Code, § 16703."

The two lawsuits were tried together to the court over four days in June 2009. A major issue in the case was the valuation of the business for buyout purposes, pursuant to Corporations Code[4] section 16701. Competing experts testified. Richard's expert based his valuation estimates on the company's financial statements and regarded the partnership tax returns as unreliable. Rudy's expert made disparaging remarks about the financial statements and based his valuation on the tax returns. The court adopted Rudy's expert's valuation. The court also found that Rudy had concealed the existence of PKE from Richard, but held that Richard had not proved any damages arising from the concealment.

Richard has appealed on two issues. First, he asserts that there was no evidence to support Rudy's expert's valuation of the business and that the court should have picked one of his expert's valuations. Second, he asserts that he did prove damages arising from Rudy's breach of his fiduciary duty to RCE by forming and doing business through PKE.

## DISCUSSION

It is, of course, well established that we review the judgment, not the trial court's underlying reasoning. Our Supreme Court has stated the rule: "[A] ruling or decision correct in law will not be disturbed on appeal merely because it [has been] given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion." (*Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070]; see also 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 346, pp. 397–398.) The rule, however, requires us to find some correct applicable theory of law. We cannot do that here.

---

[3] PKE later morphed into RC Electronics, Inc. The purpose of this entity appears to have been pursuing some business opportunities in Asia.

[4] All further statutory references are to the Corporations Code.

In this case, the judgment with respect to the partnership buyout rested solely on an inapplicable statute. There was no other theory. To look at the judgment from another viewpoint, both experts based their testimony on the incorrect legal assumption that they were evaluating a buyout. An expert's opinion that assumes an incorrect legal theory cannot constitute substantial evidence. (*Smith v. Workers' Comp. Appeals Bd.* (1969) 71 Cal.2d 588, 593 [78 Cal.Rptr. 718, 455 P.2d 822].) With both sides relying on that theory, there was neither legal nor evidentiary support for this portion of judgment. It cannot be upheld.

## I. *Dissociation vs. Dissolution*

We review the interpretation and application of a statute to undisputed facts de novo. (*Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60, 65 [118 Cal.Rptr.2d 405].) We look to the words of the statute to determine legislative intent. If the language is clear and unambiguous, we follow the plain meaning. If it is not, we may consider other interpretive aids. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) Our goal is to " ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].) We also read statutes in context with other related statutes, so that " 'the whole may be harmonized and retain effectiveness.' [Citation.]" (*People v. Pieters* (1991) 52 Cal.3d 894, 898–899 [276 Cal.Rptr. 918, 802 P.2d 420].)

The California Revised Uniform Partnership Act (RUPA) applies to the dispute between Rudy and Richard. (§ 16111, subd. (b).) The RUPA defines a partnership as "an association of two or more persons to carry on as coowners a business for profit . . . ." (§ 16101, subd. (9).) A " '[p]artnership at will' " is one "in which the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking." (§ 16101, subd. (11).)

### A. *Dissociation*

The RUPA, adopted in 1996, applies to all partnerships as of 1999. (§ 16111, subd. (b).) Section 16601, subdivision (1) allows dissociation upon "[t]he partnership's having notice of the partner's express will to withdraw as a partner or on a later date specified by the partner." Under Section 16701, subdivision (a), the partnership must buy out the dissociated partner's

interest in the partnership. Section 16701, subdivision (b) sets out the process by which the interest is to be valued.[5]

Dissociation was a new feature of the RUPA, one not present in former law. Under former law, a partnership was simply a group of people; when a partner died, withdrew, or was expelled, the partnership automatically dissolved and had to be reconstituted, unless the partnership agreement specifically provided otherwise. (See *Cagnolatti v. Guinn* (1983) 140 Cal.App.3d 42, 48 [189 Cal.Rptr. 151]; see also 9 Witkin, Summary of Cal. Law (10th ed. 2005) Partnership, § 23, p. 598, § 41, p. 615.) Dissociation permits the remaining partners to carry on partnership business without the withdrawing partner and without having to start from scratch. (9 Witkin, *supra*, § 41, p. 615.)

### B. *Dissolution*

■ Partnership dissolution occurs "[i]n a partnership at will, by the express will to dissolve and wind up the partnership business of at least half of the partners, including partners . . . who have dissociated within the preceding 90 days, and for which purpose a dissociation under paragraph (1) of Section 16601 constitutes an expression of that partner's will to dissolve and wind up the partnership business." (§ 16801, subd. (1).) The procedure to be followed upon dissolution, however, differs from the buyout procedure of section 16701. There is no buyout. Instead, the partnership's creditors are paid, and then the partners settle ·accounts between or among themselves, pursuant to section 16807.

■ When Richard withdrew from RCE, the partnership dissolved by operation of law; by definition, a partnership must consist of at least two persons. (§ 16101, subd. (9).)[6] A person cannot dissociate from a dissolved partnership, and the buyout rule of section 16701 does not apply to a two-person partnership when one partner leaves. When that happens, the dissolution procedures take over.[7] The partnership is wound up, its business is completed, and the partners make whatever adjustments are necessary to their own accounts after paying the creditors. (§ 16807.)

---

[5] The buyout price is the amount the partner would get "if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without the dissociated partner and the partnership was wound up as of that date." (§ 16701, subd. (b).)

[6] The partnership agreement, which was a stationery store form, provided that "[i]n the event of retirement, expulsion, bankruptcy, death or insanity of a general partner, the remaining partners have the right to continue the business of the partnership under the same name by themselves, or in conjunction with any other persons they select." None of the events listed in the provision happened in this case.

[7] This rule is necessary to protect the partnership's creditors. In a dissociation, the partnership assets are used to buy out the withdrawing partner. (§ 16701.) In a dissolution, the

Section 16701 is found in a chapter of the RUPA that applies to a "partner's dissociation when business [is] not wound up." (Tit. 2, ch. 5, art. 7, capitalization omitted.) The purpose of dissociation is to allow the partnership to continue with the remaining partners. When a partner withdraws from a two-person partnership, however, the business cannot continue as before. One person cannot carry on a business as a partnership. (§ 16101, subd. (9).)

■ The use of the buyout remedy of section 16701 was error, and we must reverse the judgment and remand it to the trial court with instructions to enter a judicial dissolution of the partnership under sections 16801 and 16807. The parties could peruse these code sections themselves and stipulate to a distribution of assets after the creditors are paid to minimize the time they spend before the trial judge. Or they can retry the case using the correct procedure.

## II. Damages for Breach of Fiduciary Duty

Substantial evidence supports the trial court's conclusion Rudy formed PKE to compete with RCE, but without Richard. Section 16404 identifies "refrain[ing] from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership" as one aspect of a partner's duty of loyalty toward the partnership and the other partners. (§ 16404, subd. (b)(3).) The court found, however, that Richard had not proved any damages arising from the breach; Richard appeals from this ruling.

■ A more fundamental issue is whether Richard was entitled to damages at all. Ordinarily partners cannot sue each other for damages based on partnership business, at least not until there has been an action for dissolution and accounting. (See, e.g., *Malott v. Seymour* (1950) 101 Cal.App.2d 245, 246 [225 P.2d 310]; *Mosher v. Helfend* (1935) 7 Cal.App.2d 48, 51 [44 P.2d 1050].) As the court observed in *Security Pacific Nat. Bank v. Lyons* (1994) 25 Cal.App.4th 706, 711 [30 Cal.Rptr.2d 623], this rule is subject to numerous exceptions. One exception is an action for damages for a tort "of such a nature that it not only terminates the partnership but wrongfully destroys it, and where the erring partner converts to his own use its entire assets." (*Barlow v. Collins* (1958) 166 Cal.App.2d 274, 278 [333 P.2d 64]; see also *Prince v. Harting* (1960) 177 Cal.App.2d 720, 735 [2 Cal.Rptr. 545] and cases cited; *Boyd v. Bevilacqua* (1966) 247 Cal.App.2d 272, 288 [55 Cal.Rptr. 610]; *Ellis v. Navarro* (1943) 61 Cal.App.2d 755, 759 [143 P.2d 735] [partner may sue other partner for damages if "deprived of possession of the business"].)

assets go first to pay the creditors. (§ 16807, subd. (a).) A partner cannot get first dibs on partnership assets by dissociating when in fact the withdrawal effects a dissolution.

In this case, there was no evidence showing that Rudy converted to his own use all the partnership assets or destroyed the business. (See *Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 557–558 [140 Cal.Rptr. 330] [total repudiation of partnership distinguished from lesser breach].) Richard was the one who withdrew from the partnership, thereby terminating it. Accordingly it does not appear the exception to the general rule applies here.

The parties must do an accounting, in order to comply with section 16807. If, as seems likely, the court finds that PKE or RC Electronics, Inc., improperly competed with RCE, then any funds earned by these entities that could have been earned by RCE can be folded into the accounting and distributed according to section 16807.

## DISPOSITION

The matter is reversed and remanded to the trial court for entry of an order of dissolution of the RCE partnership under sections 16801 and 16807. Any funds the court determines were improperly obtained by Rudy's competing business entities are to be included in the assets of the partnership for winding up purposes. The parties shall bear their own costs on appeal.

Moore, J., and Fybel, J., concurred.