Filed 2/22/22  Hudson v. McSherry & Hudson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FREDERICK R. HUDSON III, | D079476 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 18CV01818) |
| MCSHERRY & HUDSON et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Santa Cruz, John Gallagher, Judge.  Affirmed.

Strong Appellate Law, Jeanine G. Strong; JRG Attorneys at Law, and Robert E. Rosenthal for Plaintiff and Appellant.

The Grunsky Law Firm, Thomas N. Griffin, and Cheryl L. Ferguson for Defendants and Respondents.

Appellant Frederick R. Hudson III is the former partner of respondents David Bachan and Steven Duke in an insurance brokerage firm.  The parties dispute the ownership of an insurance policy purchased by Bachan and Duke on Hudson's life.  The trial court determined that at the time Hudson gave a

notice to withdraw from the partnership under Corporations Code section 16601[1] the partnership had already been dissolved, preventing Hudson from exercising his right to transfer the life insurance policy under the parties' partnership agreement. On appeal from the trial court's judgment, Hudson asserts the court erred by concluding the partnership was dissolved. We reject Hudson's argument and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The firm is an insurance brokerage located in Watsonville. Hudson's grandfather was a founding member of the firm, which is over 70 years old. Hudson joined the business and eventually became a partner. Bachan joined the firm in 1979 and became partner in 1986. Duke joined in 2006 and became partner in 2012. The firm's prior partnership agreement required that on the death of a partner the remaining partners purchase the deceased partner's interest in accordance with the valuation provisions of the partnership agreement. The partnership agreement also contained a provision that allowed for the maintenance of cross-purchase life insurance policies to provide a source of funds for the mandatory buyout of a deceased partner's interest.

In 2004, Hudson was diagnosed with cancer. At that time, the cross-purchase term life insurance policy on his life was nearing its expiration date. The policy contained a provision allowing the conversion to whole life insurance without a medical examination. Fearing the term option would be denied in light of Hudson's cancer diagnosis, the other partners exercised the provision and began paying annual premiums for the whole life policy of $61,950, which had a death benefit of $1.5 million.

---

[1]    Subsequent statutory references are to the Corporations Code.

Beginning sometime in 2011, the owners negotiated a new partnership agreement that became effective January 1, 2012. At the same time, Hudson also sold a portion of his interest in the firm to Bachan and Duke by way of a separate purchase agreement. Under the purchase agreement, in consideration for Hudson's ownership interest, Bachan and Duke signed promissory notes requiring monthly payments to Hudson for 12 years. As additional consideration, the purchase agreement required Bachan and Duke to maintain the whole life insurance policy "in order to provide funds for the payment of any balances owing on their respective Promissory Notes...."

Article 8 of the 2012 partnership agreement, "Transfer of Partnership Interests," contains provision 8.17, titled "disposition of insurance policies," which states that "[o]n the occurrence of any event requiring purchase of a Former Partner's interest for any reason other than the Former Partner's death, any insurance policies on his life, for which any other Partner paid the premiums, shall be delivered to the Former Partner in kind and shall become his property. If the policy has a cash surrender value, that amount shall be paid by the Former Partner to the Partners who had paid premiums." The agreement defines a "Former Partner" as one who has withdrawn or been expelled from the partnership.

In 2016, Hudson decided to retire from the business and sell his remaining interest, which by then was just 1%. The parties were unable to negotiate the separation because they could not agree on ownership of the whole life insurance policy. Hudson believed he was entitled to the policy under provision 8.17 of the partnership agreement, and Bachan and Duke disagreed. They contended that the provision was intended to operate prospectively, and did not apply to the whole life policy because it had

already been committed under the purchase agreement as security for the promissory notes.

The dispute over the ownership of the life insurance policy continued for months.  Eventually, Hudson's relationship with the other partners soured to the point they were no longer speaking.  To resolve the dispute, Bachan, Duke, and the one other partner at that time, decided to dissolve the firm in accordance with section 16801.  After an official partnership vote on October 26, 2016, they notified Hudson of the dissolution by way of a note left on his desk on December 2, 2016.

On February 17, 2017, Hudson's attorney notified Bachan and Duke that Hudson was withdrawing from the partnership.  Hudson also tendered the cash surrender value on the life insurance policy as he asserted was his right under section 8.17 of the partnership agreement.

Bachan and Duke engaged counsel and an accounting firm to oversee the winding down of the partnership and to form a new limited liability company (LLC) to operate the business going forward.  The dissolution of the partnership triggered an acceleration clause in the promissory notes, and in February 2018, Bachan and Duke obtained financing to pay off the remaining $3.1 million owed to Hudson on the notes.

In June 2018, Hudson brought suit against Bachan and Duke, as well as two former iterations of the partnership and the other individual former partner at the time of the dissolution.  All of the defendants but Bachan and Duke were dismissed before the proceedings at issue here.  Hudson asserted nine causes of action based on the refusal of Bachan and Duke to accept Hudson's tender of the cash value of the life insurance policy and transfer the policy to him, and on the valuation of another insurance business owned by the parties.  A minute order in the appellate record, dated November 27,

4

2018, indicates the court was notified that the case was settled "other than the cause of action relating to the insurance policy."

The parties filed trial briefs in advance of the three-day trial, which began in June 2019. Hudson's brief asserted that under the clear language of the partnership agreement, which was entered at the same time as the purchase agreement, he became a "former partner" when he withdrew from the partnership in February 2017 and was entitled to the life insurance policy under section 8.17 of the partnership agreement. The brief emphasized that the parties negotiated the partnership and purchase agreements for almost a year, and all partners understood the meaning of section 8.17 advanced by Hudson. The brief explained the provision was drafted in response to another former partner's assertion that she was entitled to continued ownership of a different policy on Hudson's life after her withdrawal.

Bachan and Duke's brief asserted the purchase agreement governed the dispute and that under that agreement they were entitled to the life insurance policy. They argued that because the policy served as security for the promissory notes in favor of Hudson, which was the consideration for the purchase of his interest in the firm in 2012, the policy and its benefits were theirs to keep. Bachan and Duke also argued that Hudson was not a former partner because the partnership was dissolved in 2016, and therefore the partnership agreement, including section 8.17, was not applicable.

At trial, Bachan, Duke, and Hudson testified about their understanding of the two agreements in alignment with the positions taken in their trial briefs. The partnership's attorney, who was involved in the drafting of both agreements, also testified. He stated his understanding that section 8.17 was

meant to apply to future policies, not the policy at issue because that policy was pledged as security for the promissory notes.

After the trial, the court issued a tentative ruling in favor of Hudson. The court explained it agreed with Hudson's interpretation of section 8.17 of the partnership agreement, which it found governed the dispute. The court also found that a notice of dissolution does not result in the immediate termination of the partnership, and that "until the winding up of a partnership is completed, the partnership business continues, and the partners may decide to carry on the business as if the dissolution had never occurred." Thus, the court found, Hudson's notice of withdrawal triggered his rights under section 8.17 of the partnership agreement.

After the court's tentative ruling, Hudson filed a proposed statement of decision. Bachan and Duke then filed objections to the proposal, arguing that the court's tentative decision was in error because the partnership had been dissolved by vote of the majority of partners in October 2016—before Hudson gave his notice of dissociation from the partnership. They contended that under sections 16801, 16802, and 16804 there was no longer a partnership at the time Hudson gave his notice of withdrawal. Accordingly, he was not a former partner for purposes of section 8.17 of the partnership agreement and could not obtain the benefits of that clause.

Before a hearing on the proposed statement of decision, the parties filed additional supplemental briefing about the dissolution of the partnership and the notice of withdrawal. Bachan and Duke's supplemental brief expanded on its objection to the proposed statement of decision, contending Hudson's notice of withdrawal was ineffective because the partnership was not ongoing at the time Hudson gave the notice. Hudson filed a response to the objections to the proposed statement of decision and a supplemental brief. In both, he

6

argued the partnership was not effectively dissolved until its business was wound up, and Hudson could dissociate from the partnership at any point prior to the dissolution. He also argued the dissolution was done in bad faith solely to keep the disputed life insurance policy, and this was a constructive expulsion of Hudson by the partners permitting him to exercise his rights under section 8.17.

The parties argued their positions on the statement of decision at a hearing. At the start of the hearing, the court noted it had prepared a revised tentative order changing its decision and concluding, based on *Corrales v. Corrales* (2011) 198 Cal.App.4th 221 (*Corrales*), that the partnership was already dissolved at the time Hudson provided his notice of withdrawal. Thus, Hudson could not exercise his rights under section 8.17 of the partnership agreement and was not entitled to relief on any of his claims.

Thereafter, the court filed the tentative order directing Bachan and Duke to prepare a statement of decision. The proposed statement of decision mirrored the tentative order and, after Hudson filed an objection, the court entered the statement of decision and judgment in favor of Bachan and Duke. Hudson timely appealed.

## DISCUSSION

Hudson argues that the court interpreted the relevant statutes incorrectly. As he argued in the trial court, he contends that the notice of dissolution of the partnership did not foreclose his withdrawal from the

partnership and the court's initial tentative decision in his favor was correct. As we explain, we reject Hudson's challenge and affirm the judgment.

A

*Legal Standards*

" 'We review the interpretation and application of a statute to undisputed facts de novo. [Citation.] We look to the words of the statute to determine legislative intent. If the language is clear and unambiguous, we follow the plain meaning. If it is not, we may consider other interpretive aids. [Citation.] Our goal is to ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and to avoid an interpretation that would lead to absurd consequences.' [Citation.]" [Citation.]' [Citation.] We also read statutes in context with other related statutes, so that ' "the whole may be harmonized and retain effectiveness." ' " (*Corrales, supra*, 198 Cal.App.4th at p. 226.)

The default rules governing partnerships are found in the California Revised Uniform Partnership Act (RUPA), which was enacted in 1996 and is set forth in Title 2, Chapter 5 of the Corporations Code. (§ 16100, et seq.) "The RUPA defines a partnership as 'an association of two or more persons to carry on as coowners a business for profit….' (§ 16101, subd. (9).) A ' "[p]artnership at will" ' is one 'in which the partners have not agreed to remain partners until the expiration of a definite term or the completion of a particular undertaking.' (§ 16101, subd. (11).)" (*Corrales, supra*, 198 Cal.App.4th at p. 226.)

Article 8 of Chapter 5, titled "Winding Up Partnership Business," (§§ 16801–16807), governs the dissolution of partnerships. Section 16801 contains a list of events that result in dissolution, the first of which states:

"(1) In a partnership at will, by the express will to dissolve and wind up the partnership business of at least half of the partners, including partners, other than wrongfully dissociating partners, who have dissociated within the preceding 90 days, and for which purpose a dissociation under paragraph (1) of Section 16601 constitutes an expression of that partner's will to dissolve and wind up the partnership business."  (§ 16801, subd. (1).)

Section 16802 states that a partnership continues after dissolution "only for the purpose of winding up its business" and that "[t]he partnership is terminated when the winding up of its business is completed."  (§ 16802, subd. (a).)  The statute also governs the waiver of dissolution, stating:  "At any time after the dissolution of a partnership and before the winding up of its business is completed, all of the partners, including any dissociating partner other than a wrongfully dissociating partner, may waive the right to have the partnership's business wound up and the partnership terminated."  (§ 16802, subd. (b).)  In the event of such a waiver, "[t]he partnership resumes carrying on its business as if dissolution had never occurred, and any liability incurred by the partnership or a partner after the dissolution and before the waiver is determined as if dissolution had never occurred."  (§ 16802, subd. (b)(1).)

Section 16803 governs the winding up of the partnership after dissolution, so long as the dissolution is not waived.  It states, in pertinent part, "[a] person winding up a partnership's business may preserve the partnership business or property as a going concern for a reasonable time, prosecute and defend actions and proceedings, whether civil, criminal, or administrative, settle and close the partnership's business, dispose of and transfer the partnership's property, discharge the partnership's liabilities, distribute the assets of the partnership pursuant to Section 16807, settle

9

disputes by mediation or arbitration, and perform other necessary acts."
(§ 16803, subd. (c).)

The dissociation of a partner from an ongoing partnership is governed by section 16601. Subdivision (1) of the statute, referenced in section 16801, "allows dissociation upon '[t]he partnership's having notice of the partner's express will to withdraw as a partner or on a later date specified by the partner.'" (*Corrales, supra*, 198 Cal.App.4th at p. 226.) Dissociation then triggers a statutory buyout of the dissociating partner's interest in the firm under section 16701, subdivision (a). Section 16701, subdivision (b) "sets out the process by which the interest is to be valued." (*Corrales,* at p. 227)

"Dissociation was a new feature of the RUPA, one not present in former law. Under former law, a partnership was simply a group of people; when a partner died, withdrew, or was expelled, the partnership automatically dissolved and had to be reconstituted, unless the partnership agreement specifically provided otherwise." (*Corrales, supra*, 198 Cal.App.4th at p. 227.) In contrast, "[d]issociation permits the remaining partners to carry on partnership business without the withdrawing partner and without having to start from scratch." (*Ibid.*)

In *Corrales*, which the trial court relied on, brothers Rudy and Richard entered a partnership to sell electronics. When the business relationship soured as a result of Rudy opening a competing business without Richard, Richard sent his brother a notice of disassociation under section 16601. The parties then litigated various claims, including the valuation of the business for purposes of the buyout under section 16701. (*Corrales, supra*, 198 Cal.App.4th at pp. 224–225.) On appeal from the judgment adopting Rudy's valuation, Division Three of the Fourth District Court of Appeal reversed, holding the buyout procedures of 16701 were not applicable to the dispute

10

because Richard's withdrawal from the partnership operated as a dissolution of the partnership as a matter of law. (*Corrales, supra*, 198 Cal.App.4th at p. 227.)

The court held that "[a] person cannot dissociate from a dissolved partnership, and the buyout rule of section 16701 does not apply to a two-person partnership when one partner leaves. When that happens, the dissolution procedures take over. The partnership is wound up, its business is completed, and the partners make whatever adjustments are necessary to their own accounts after paying the creditors. (§ 16807.)" (*Corrales, supra*, 198 Cal.App.4th at p. 227, fn. omitted.) The court noted that "[s]ection 16701 is found in a chapter of the RUPA that applies to a 'partner's dissociation when business [is] not wound up.' The purpose of dissociation is to allow the partnership to continue with the remaining partners. When a partner withdraws from a two-person partnership, however, the business cannot continue as before. One person cannot carry on a business as a partnership. (§ 16101, subd. (9).)" (*Id.* at p. 228.)

B

*Analysis*

Hudson asserts that *Corrales* does not control this case and makes various other arguments supporting his request for reversal. He contends binding precedent establishes partnerships can continue to exist after a notice to dissolve. He also argues winding up a business is not mandatory and the partners can, and here did, waive the dissolution. Finally, Hudson argues he properly asserted his right to withdraw under section 16602, subdivision (a) after he received the notice of dissolution. None of these arguments has merit.

While *Corrales* does not precisely address the situation here, contrary to Hudson's assertion, the case supports the trial court's interpretation of RUPA. Once a partnership is dissolved, either by a lack of partners (as in *Corrales*) or by operation of section 16801, dissociation from the partnership under section 16602 is no longer possible. Indeed, no case cited by Hudson supports his assertion that a dissolution does not occur until the partnership's business is entirely wound up. And, when read individually and as a whole, the applicable statutes clearly support the trial court's decision.

In *Peñasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180 (*Peñasquitos*) the Supreme Court held that homeowners who discovered construction defects after two corporate developer defendants had dissolved, could bring claims against the no-longer-existing corporations. (*Id.* at p. 1183.) In so holding, the court looked to section 2010, which governs the dissolution of corporations and states that "[a] corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof." (§ 2010, subd. (a).)

*Peñasquitos* addresses the contours of what activity is included in the winding up of an entity. It holds a corporation can still face liability for claims caused by its business activity before dissolution, even if the claims arise only after dissolution. Explaining its holding, the court stated that "a corporation's dissolution is best understood not as its death, but merely as its retirement from active business." (*Peñasquitos, supra*, 53 Cal.3d at p. 1190.) As relevant here, *Peñasquitos* stands for the uncontroversial proposition that

12

after dissolution the entity survives for the limited purpose of winding up its affairs.

Section 16803, which Hudson agrees is a parallel provision for partnerships to section 2010, likewise provides for limited activity related to the winding up of a partnership.[2] After stating that any partner not disassociated from the partnership may participate in winding up its business, as noted, the statute provides that "[a] person winding up a partnership's business may preserve the partnership business or property as a going concern for a reasonable time, prosecute and defend actions and proceedings, whether civil, criminal, or administrative, settle and close the partnership's business, dispose of and transfer the partnership's property, discharge the partnership's liabilities, distribute the assets of the partnership pursuant to Section 16807, settle disputes by mediation or arbitration, and perform other necessary acts." (§ 16803, subd. (c).)

In *Heller*, the Supreme Court addressed whether a dissolved law partnership retained property rights in matters in which its former partners had been hired on an hourly basis. In holding that the firm did not retain a property interest, the Supreme Court noted that winding up a dissolved law partnership's hourly fee business extended "no further than to certain acts," including "those acts necessary to (1) preserve legal matters for transfer to the client's new counsel or the client itself, (2) effectuate such a transfer, and (3) collect on work done pretransfer." (*Heller, supra*, 4 Cal.5th at p. 481.) An underlying assumption of *Heller* is that once dissolution is triggered by section 16801, the firm continues to exist for the sole purpose of winding up

---

[2] "Winding up is 'the process of completing all of the partnership's uncompleted transactions, of reducing all assets to cash, and of distributing the proceeds, if any, to the partners.'" (*Heller Ehrman LLP v. Davis Wright Tremaine LLP* (2018) 4 Cal.5th 467, 481 (*Heller*).)

its business.  *Heller*, thus, also supports the position advanced by Bachan and Duke that a partner cannot dissociate from the partnership once the dissolution has occurred and the firm has begun to wind up its affairs.

The other relevant statutory provisions of RUPA solidify this logical conclusion.  As Bachan and Duke point out, sections 16801, 16802, and 16701.5 would lack meaning if section 16602, subdivision (a) were interpreted to allow for dissociation after a partnership is dissolved.  Specifically, if dissociation were permitted after dissolution, the provision of section 16801 that includes partners who have dissociated within 90 days of the decision to dissolve, would be illogical.  There would be no need to include recently dissociated partners in the decision to dissolve if dissociation can occur thereafter.  Likewise, section 16802's inclusion of recently dissociated partners in the decision to waive a dissolution decision would be unnecessary.

Similarly, section 16701.5, which negates the effect of any dissociation within 90 days of a dissolution under section 16801, would be rendered superfluous.  Section 16701.5 provides: "(a) Section 16701 shall not apply to any dissociation that occurs within 90 days prior to a dissolution under Section 16801.  [¶]  (b) For dissociations occurring within 90 days prior to the dissolution, both of the following shall apply:  [¶] (1) All partners who dissociated within 90 days prior to the dissolution shall be treated as partners under Section 16807. [¶] (2) Any damages for wrongful dissociation under Section 16602 and all other amounts owed by the dissociated partner to the partnership, whether or not presently due, shall be taken into account

14

in determining the amount distributable to the dissociated partner under Section 16807."[3]

The statute prevents partners from racing to the door in anticipation of dissolution to avoid the costs of discharging partnership obligations with partnership assets, including individual partner contributions.[4] Hudson's interpretation would produce the absurd result of allowing a partner to escape financial liability for winding up costs by dissociating *after* dissolution, and denying the same relief to partners who dissociate 90 days or less *before* dissolution. Interpreting section 16602 to apply only before dissolution harmonizes the statute with the other provision of RUPA.

Hudson asserts that because a "dissolved company exists to sue and be sued, there is no principled reason to say the company no longer exists for one isolated and arbitrary purpose: to prevent a partner from withdrawing." This assertion is misguided. The statutes and case law clarify that once a

---

[3] Section 16807 governs the distribution of partnership liabilities and assets during the wind up. (See *Corrales, supra*, 198 Cal.App.4th at p. 227 [After dissolution, "the partnership's creditors are paid, and then the partners settle accounts between or among themselves, pursuant to section 16807."].)

[4] A letter provided by Bachan and Duke in their brief from the partnership committee of the Business Law Section of the State Bar of California to the Chief Legislative Counsel, dated January 12, 1996, described the rationale for section 16701.5. The bar committee explained that applying the standard dissociation provisions would "create a 'race for the door,' since the first partners to withdraw would have the greatest number of remaining partners left to fund a buyout and, more importantly, to indemnify them against all partnership liabilities. For example, a key partner could withdraw and require that all the remaining partners indemnify him or her against a long-term lease obligations of the partnership, even though the remaining partners do not wish to continue the partnership without that key partner."

partnership is dissolved, so long as the dissolution is not waived prior to its termination, it exists only for the principled purpose of winding up the business.

Finally, Hudson correctly asserts that once a partnership gives notice to dissolve, the dissolution is not mandatory and can be waived. (§ 16802, subd. (b).) He argues that the dissolution of the firm here was waived by the remaining partners' failure to wind up the business after they notified Hudson of their vote to dissolve. Hudson asserts that Bachan and Duke had the burden to show that the partnership was actually terminated and failed to do so. Bachan and Duke respond that Hudson failed to make this argument in the trial court, but the court considered the issue and determined no waiver occurred.

We agree with Bachan and Duke the court considered this issue and properly rejected it. As an initial matter, the timing of the dissolution was considered explicitly in the court's initial tentative decision. In its final statement of decision, the court stated, "unless the dissolving partners changed their minds and decided to waive the right to wind up and terminate the partnership business under Corporations Code 16802, the partnership only existed for the purpose of winding up the business." The court then found "[t]here was no ongoing partnership to withdraw from when the plaintiff attempted to dissociate." Ample evidence supported this conclusion, which included a finding that there had been no waiver of the dissolution.

Specifically, there was no evidence that the partners voted to rescind the dissolution, and the evidence showed that the remaining partners took steps to complete the wind up and did actually terminate the partnership, including: engaging counsel and an accounting firm to oversee the winding up process; accepting the promissory notes' acceleration clause based on the

16

dissolution and obtaining financing to pay off the notes' remaining balance of $3.1 million; converting the partnership to a LLC and transferring the partners' licensing to the LLC; and notifying their business partners and clients that the partnership was dissolved and replaced with the new LLC, which was completed in 2018.[5]  This evidence sufficiently supported the finding that Bachan and Duke did not waive the dissolution, and we reject Hudson's request for us to reevaluate this evidence to find waiver.  (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 ["When a civil appeal challenges findings of fact, the appellate court's power begins and ends with a determination of whether there is any substantial evidence— contradicted or uncontradicted—to support the trial court findings."].)

---

[5]     Hudson filed an unopposed request for judicial notice of the LLC's articles of incorporation filed with the California Secretary of State on May 18, 2018, the LLC's 2018 statement of information, the LLC's 2020 statement of no change, and inquiries to the California Department of Insurance showing the inactive status of the former partnership in January 2019 and the active status of the LLC at the same time.  We grant the request. (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* (2011) 200 Cal.App.4th 1470, 1483–1484.)

## DISPOSITION

The judgment is affirmed. Respondents to recover costs of appeal.


                                                    McCONNELL, P. J.

WE CONCUR:


HALLER, J.


DO, J.