Filed 3/9/26  Tan v. Chan CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TUN SEIN TAN,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>WAN SEIN CHAN et al.,<br><br>  Defendants and Appellants. | H051616<br>(Santa Clara County<br>Super. Ct. No. 21CV387894)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on February 10, 2026, be modified as follows:

At the end of the penultimate sentence, on page 14, after the sentence "This undisputed summary judgment evidence demonstrates that Tan demanded access to the records under section 16403, subdivision (b) and Chan refused," add as footnote 15 the following footnote, which will require renumbering of all subsequent footnotes:

[15] To be sure, Tan's demand did not expressly invoke section 16403. Rather, Tan demanded documents that he was entitled to under the statute.

There is no change in the judgment.  Appellant's petition for rehearing is denied.

_____
                                    LIE, J.


WE CONCUR:




_____
              GREENWOOD, P. J.




_____
              GROVER, J.




*Tan v. Chan et al.*
H051616

Filed 2/10/26  Tan v. Chan CA6 (unmodified opinion)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TUN SEIN TAN,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WAN SEIN CHAN et al.,<br><br>    Defendants and Appellants. | H051616<br>(Santa Clara County<br> Super. Ct. No. 21CV387894) |

Under California law, a partnership must comprise at least two partners. (Compare Corp. Code, § 16101, subd. (a)(9) [minimum number of partners] with § 17704.01, subd. (a) [contemplating single-member limited liability company (LLC)].)[1] A " '[p]artnership [terminable] at will' "—one not subject to "the expiration of a definite term or the completion of a particular undertaking" (§ 16101, subd. (a)(11))—is dissolved "by the express will to dissolve and wind up the partnership business of at least half of the partners."  (§ 16801, subd. (1).)  A partnership not terminable at will may be dissolved—"[o]n application by a partner"—by "judicial determination" of enumerated conditions, including that "[a]nother partner has engaged in conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with that partner" or that "[i]t is not otherwise reasonably practicable to carry

---

[1] Undesignated statutory references are to the Corporations Code.

on the partnership business in conformity with the partnership agreement." (§ 16801, subds. (3), (5)(B) & (C).) Typically, "a partnership continues after dissolution only for the purpose of winding up its business." (§ 16802, subd. (a).)

Plaintiff Tun Sein Tan and defendant Wan Sein Chan are brothers and the only partners in defendant Chan-Tan-Wong (CTW), a California general partnership. When Tan asked for access to the partnership's books under Corporations Code section 16403, defendants refused. When Tan gave defendants notice that he intended to withdraw from the partnership, defendants neither exercised their option to purchase or have another purchase Tan's interest in the partnership nor took action to wind down the partnership. When Tan sued to compel dissolution of the partnership and production of the partnership's records (see § 16405, subd. (b)(2)(A), (C)), defendants answered by pleading, in addition to a general denial, unspecified "legal and equitable rights" entitling them to an offset against any recovery by Tan.

Defendants now appeal from the summary judgment for Tan. Because there is no triable issue of material fact and no basis in statute or the partnership agreement to continue the partnership despite Tan's duly noticed withdrawal and defendants' inaction, we will affirm.

## I.    BACKGROUND

### A.    *The Pleadings*

In his operative first amended complaint, Tan alleged as follows.

Tan, Chan, and their sister Wai Lee Wong formed CTW in 1980, their respective interests set at 43.1 percent each for Tan and Chan and 13.8 percent for Wong. Wong withdrew in 1988, assigning her interest to Chan.

CTW's business is to invest in real property. It currently owns a single residential rental property, which it purchased in 1988 after Wong's withdrawal. Chan has for decades managed the property and CTW's finances.

2

Tan now distrusts Chan.  Since 2014 Tan has pushed to dissolve the partnership, but Chan has refused because Chan wants to operate CTW until both partners die to save on taxes.

In March 2019, Tan formally requested a statement of CTW's capital accounts for each partner and all the partnership's financial and accounting records, back to the 1980's.  In his third cause of action for accounting, Tan alleged, "[d]efendants have refused demand for financial information pursuant to [section ]16403."  As to that cause of action, Tan prayed for "all of the books and records requested which [d]efendants have failed to provide."

In July 2019, Tan notified Chan that Tan was voluntarily terminating the partnership, as was Tan's right under the partnership agreement.  Tan's notice triggered a 90-day window for CTW to give Tan notice that it intended to exercise its option to purchase Tan's interest in the partnership, so Chan is required to dissolve the partnership.  In his first and second causes of action, Tan claims that CTW must wind up and dissolve because (1) an event triggering dissolution under the contract has occurred (§ 16801, subd. (3)) and (2) it is no longer reasonably practicable to carry on the partnership with Chan or in conformity with the partnership agreement (§ 16801, subd. (5)(B)–(C)).  Under those causes of action, Tan prayed for a decree that CTW "be wound up and dissolved in the manner provided by law."

Defendants answered the operative complaint with a general denial.  Among other affirmative defenses, defendants pleaded an entitlement to an offset against any recovery by Tan based on unspecified "legal and equitable rights."

**B.**     ***Summary Judgment***

Tan moved for summary judgment, arguing that Tan's notice of termination and CTW's failure to timely exercise its repurchase option required CTW to dissolve.  Tan argued he was entitled to an accounting, which he variously described as copies of CTW's books and records and an account of the "profits and losses" in conjunction with

3

dissolution. Opposing the motion, defendants disputed the sufficiency of Tan's evidence to resolve his accounting cause of action or the setoff affirmative defense and contested both Tan's interpretation of the contract and the partnership's ability to continue functioning.

The trial court granted summary judgment for Tan. The trial court ruled that Tan was entitled to dissolve the partnership under section 16801, subdivisions (3) and (5)(C).[2] The trial court ruled that defendants' allegations were insufficient to raise a setoff affirmative defense and that defendants did not file admissible evidence supporting the defense. And the trial court ruled that Tan's third cause of action for accounting was disposed of because an accounting would be required as part of the dissolution.

The trial court entered a judgment in Tan's favor on all three causes of action. Defendants timely appealed.

## II. DISCUSSION

### A. *Standard of Review*

A plaintiff moving for summary judgment must " 'prove[ ] each element of the cause of action.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*); see also *id*. at p. 850; Code Civ. Proc., § 437c, subd. (p)(1).) The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar*, at p. 850.) If the moving party carries the initial burden, then the opposing party must "make a prima facie showing of the existence of a triable issue of material fact." (*Ibid*.) We review the entry of summary judgment de novo, liberally construing the losing party's evidentiary submission while strictly scrutinizing the winning party's showing, and resolving any evidentiary doubts or

---

[2] To the extent the first cause of action sought dissolution under section 16801, subdivision (3) and the second cause of action sought dissolution under section 16801, subdivision (5)(B)–(C), this reasoning addressed both causes of action.

ambiguities in the losing party's favor.  (See *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

**B.**     ***Dissolution***

The trial court ruled that Tan was entitled to dissolve the partnership for two independent reasons:  (1) " '[a]n event agreed to in the partnership agreement resulting in the winding up of the partnership business' " had occurred; and (2) " '[i]t [was] not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement.' "  (See § 16801, subds. (3), (5)(C).)  We agree that Tan established his entitlement to relief on both grounds.[3]

**1.**     ***Whether an Event Agreed to in the Partnership Agreement Required Dissolution***

**a.**     ***The Contract Terms***

At the threshold, we reject defendants' contention that there is no admissible evidence of the partnership agreement's terms.  Tan filed a declaration with his moving papers authenticating the partnership agreement.  The copy attached to his declaration was unsigned.  Tan's counsel later filed a second document attaching an amended exhibit, an executed copy of the partnership agreement.  Defendants filed no evidentiary objections to either document and submitted no contrary evidence of the partnership agreement's material terms.[4]

---

[3] Consistent with Tan's substantive claims and his prayer for relief, we understand the trial court's judgment in his favor to constitute a direction that the partnership be dissolved, requiring that its business be wound up.  That latter process may yet be completed without further court intervention:  Tan through his first two causes of action has merely invoked the authority of the courts to resolve the parties' dispute as to whether dissolution is required.

[4] Chan attached to his declaration a copy of the agreement as originally filed by Tan.  Defendants argued for their preferred interpretation of the partnership agreement based on the terms in that document.  While defendants also argued in their opposition brief that the same contract was not the true partnership agreement and that there was no

On appeal, defendants argue that it is the executed agreement supplied by counsel that creates a factual dispute about the authenticity of the unsigned agreement attached to Tan's declaration. Tan's attempt to replace the unsigned copy of the partnership agreement with an executed copy does not create a material factual dispute about the true written terms of the agreement. If his amended exhibit is accepted, then the signed agreement should be treated as an accurate copy of the agreement. Otherwise, the unsigned copy should be treated as such. We can discern no meaningful difference between the material terms of the two versions, and defendants have identified none.[5] Thus, the material terms of the agreement are undisputed at summary judgment.

We review the application of contractual language to undisputed facts de novo. (See *Reich v. Reich* (2024) 105 Cal.App.5th 1282, 1288; see also *Guardianship of Saul H.* (2022) 13 Cal.5th 827, 846–847.) The terms relevant to this dispute are as follows.

"The purposes of the partnership are to acquire for investment purposes . . . real property." At formation, the partners contributed specified property interests to CTW. The partners agreed to contribute monthly "cash sufficient to cover any negative cash flows incurred by the partnership as a result of the operation of the partnership business." The agreement required the maintenance of individual capital accounts for each partner and required CTW's net profits or losses for each fiscal year to "be determined as soon as practicable after the close of that fiscal year."

---

foundation for the executed agreement supplied as an amended exhibit by counsel, these arguments were neither presented as evidentiary objections nor supported by evidence of any other version of the agreement.

[5] This is not to say there are no differences. For example, the unsigned version provides that "partnership decisions shall be made equally by the Partners" whereas the signed version provides that "partnership decisions shall be made by those Partners who collectively possess a majority interest in the partnership profits and losses." But nothing about the relative authority of partners in management of the partnership purports to alter the right of any partner under both iterations of the agreement to "voluntarily and without cause terminate the partnership" on 90 days' written notice.

Under Article X, "a Partner . . . not then in default of any provision of [the partnership agreement] . . . may voluntarily and without cause terminate the partnership after [90] days['] written notice thereof to the partnership."  CTW has a 90-day period "commencing upon the date that written notice of voluntary termination is given to [it]" to exercise an "option to purchase the entire interest of the" partner who gave notice by "giving written notice of the intent to exercise to [that partner] within" the 90-day period. "If the option is exercised, the partnership shall not terminate, but shall continue with the remaining Partners."

The purchase price under Article X is determined by reference to Article XI. Article XI provides three options.  First, the partnership, acting through its partners, is to determine the value of each partner's interest within 60 days after the close of each fiscal quarter and record those valuations.  Second, if the valuations are "more than [one] year old at the time of an event requiring valuation of a partnership interest," then the valuation is set "by agreement between [CTW] and the" selling partner.  Third, if CTW and the selling partner cannot agree to a price, "then the matter shall be submitted to arbitration."

Under Article X, "[t]he purchase price shall be paid in [12] or fewer monthly installments, with the first installment payable at the date of exercise."

Article XII requires CTW to be dissolved "[u]pon the withdrawal of any Partner, if the partnership fails to duly exercise the option granted to it to purchase the interest of the withdrawing Partner."  Upon dissolution, "the Partner(s) shall cause the partnership's affairs to be wound up and its assets liquidated within a reasonable period of time, a final accounting made and the books of the partnership closed with the proceeds, after expenses of such liquidation, to be distributed" according to specified terms.

### b.    *Whether Tan Triggered Dissolution under Article X*

Tan declared that he performed all his obligations under the partnership agreement and submitted the notice he mailed Chan (at an address that doubles as CTW's business

address and Chan's home address) announcing that he was "voluntarily terminating CTW . . . [90] days after this notice." Tan declared that CTW did not give him notice of its intent to exercise its option to purchase Tan's interest within 90 days. This satisfies Tan's initial burden of showing that an event agreed to in the partnership agreement triggered dissolution.

Defendants' attempts to refute Tan's legal arguments or raise a factual dispute are unpersuasive.

First, defendants argue that the partnership agreement should be interpreted so that CTW's 90-day option period starts on the date a purchase price is determined under Article XI, not the date on which the termination notice is given. Defendants assert that their interpretation is the only practical one, as CTW lacks sufficient information to make an informed decision to exercise the option until a price is determined and cannot make its first installment payment payable at the date of exercise if it does not know the purchase price. To the extent the price can be determined by arbitration, defendants maintain that "there is no certainty that an arbitration could be completed . . . within 90 days," arguing that practical issues would make an arbitral valuation in that period unlikely.

But defendants' arguments contravene the plain language of Article X, which unambiguously requires CTW to give "written notice of the intent to exercise" its option during the 90-day period "commencing upon the date that written notice of voluntary termination is given." The agreement sets this deadline while allowing for the possibility that arbitration may be required to establish the ultimate purchase price. Nothing in the agreement suggests any basis to doubt that CTW—having access to its own records of the partnership business and partner contributions—would be able to reasonably estimate the potential outcomes of arbitration concerning the value of a dissociating partner's

8

interest.[6]  Even if this may require CTW to give notice of its intent to exercise its option and make some of the 12 installment payments toward the purchase price before a final price is established, nothing in the agreement either makes the notice of election irrevocable or requires all 12 installments be equal.[7]  Not unlike the Legislature's later enactment of section 16701, the agreement contemplated the practical difficulties identified by defendants but nevertheless limited the time to give notice of the intent to exercise the option and specified that this time limit would commence with the notice of voluntary termination.  The agreement controls.

Noting that the "price to be paid" is a material element of a contract for the sale of real estate (see *Stockwell v. Lindeman* (1964) 229 Cal.App.2d 750, 758), defendants argue that CTW could not validly give notice of its intent to exercise its option until the price was reduced to a sum certain.  But to the extent the partnership agreement might in some contexts require CTW to give notice of its intent to exercise its purchase option before a sum certain price has been determined in arbitration, we perceive no reason to preclude CTW from binding itself to purchase a departing partner's interest for the price to be determined at arbitration.  This interpretation gives all the partners the benefit of the

---

[6] Addressing a partner's dissociation when a partnership is to continue, the Legislature requires a partnership, absent a purchase agreement with the dissociated partner, to estimate and pay the buyout price and accrued interest, less applicable offsets. (See § 16701, subd. (e).)  We are not persuaded by any suggestion that it is impracticable for a partnership to estimate the value of a partner's share simply because the partner has not agreed to a valuation.

[7] We express no opinion on what limitations the implied covenant of good faith and fair dealing might impose on the size of the installment payments.  We note only that CTW need not know the exact purchase price to pay initial installments.

opportunity to liquidate their partnership interest on a defined time horizon, even if it may still take over a year to receive all the monthly installment payments.[8]

Second, defendants contend that even if the partnership had to exercise its option within 90 days of a proper notice of termination Tan had no right to terminate the partnership because Tan was in default.[9]  Specifically, defendants assert that Tan was in default because:  (1) CTW never established capital accounts for its partners; (2) CTW did not evaluate quarterly the value of the partner's respective interests under Article XI; and (3) Tan did not agree to a purchase price under Article XI.  But, unlike Tan's obligation to contribute capital to cover CTW's losses, none of these provisions impose an obligation that is personal to Tan.  CTW's omissions are not Tan's defaults.  Nor was Tan obligated to agree to a purchase price under Article XI—that article permits three alternative methods of valuation, one of which is arbitration.  Because the price can be established through a contested arbitral valuation, we do not interpret the alternate methods of establishing a price to be mandatory.[10]

---

[8] *Larkin v. Williams, Woolley, Cogswell, Nakazawa & Russell* (1999) 76 Cal.App.4th 227 is inapposite.  There, the partnership agreement provided for dissolution only upon the affirmative vote of a majority of the partners.  (*Id*. at p. 229.) But one partner filed a complaint for dissolution on the ground that another partner had breached the agreement.  (*Ibid*.)  The partnership agreement contained an arbitration provision that covered any claim arising out of a breach of the agreement.  (*Ibid*.)  The *Larkin* court held that the complaint was covered by the arbitration provision.  (*Id*. at pp. 229–231.)

[9] Chan in responding to Tan's notice asserted that Tan as the minority partner lacked any right to dissolve the partnership.  But the relative size of Tan's partnership interest is irrelevant, when he represents at least half the partners.  (Compare § 16801, subd. (1) with §17707.01, subd. (b) [requiring for voluntary dissolution of an LLC "the vote of 50 percent or more *of the voting interests* of the members of the limited liability company" in the operating agreement (italics added)].)

[10] We acknowledge that the first valuation method contains mandatory language. But the first method is subordinate to a structure that allows any of three methods.  So we understand the mandatory language within the first method to indicate how the first

10

## 2. *Whether it is Reasonably Practicable to Carry on the Partnership Business in Conformity with the Partnership Agreement*

CTW is a two-member partnership that has for decades rented a single residential property, which it owns. There is no dispute that Tan wants to leave the partnership. In March 2019, Tan, through counsel, sent a letter complaining that Chan had refused Tan's request to dissolve the partnership and announcing Tan's intention to seek a court-assisted dissolution if the matter could not be resolved amicably. In July 2019, Tan exercised his contractual option to terminate the partnership, which in his express view required CTW to either purchase his share or terminate.

Nothing in the agreement or California partnership law permits Chan to force Tan to remain a partner against Tan's will. A partner may dissociate from a partnership upon "[t]he partnership's having notice of the partner's express will to withdraw as a partner or on a later date specified by the partner." (§ 16601, subd. (1).) A partnership at will is dissolved "by the express will to dissolve and wind up the partnership business of at least half of the partners, including partners, other than wrongfully dissociating partners, who have dissociated within the preceding 90 days, and for which purpose a dissociation under paragraph (1) of Section 16601 constitutes an expression of that partner's will to dissolve and wind up the partnership business." (§ 16801, subd. (1).)

When a partner's withdrawal leaves only one member in the partnership, the partnership dissolves as a matter of law because a partnership must consist of at least two persons. (*Corrales v. Corrales* (2011) 198 Cal.App.4th 221, 227.) So the trial court's determination that it was not reasonably practicable to carry on the partnership business in conformity with the partnership agreement follows from the undisputed evidence that Tan did not wish to proceed with that business, even if Tan's efforts were insufficient to

---

method shall be carried out if invoked, not that the partnership agreement mandates the first method.

11

dissociate himself from the partnership. Defendants' evidence of the personal animosity between Tan and Chan highlights the impracticability of carrying on. (See *Navarro v. Perron* (2004) 122 Cal.App.4th 797, 799–801 [deteriorated relationship between members of partnership made common ownership of duplex, which partnership had been formed to purchase, impossible].)

Defendants' contention that the partnership could be salvaged by bringing in a new partner is unpersuasive.[11] Chan never brought in a new partner. In every case, there will be speculative scenarios in which the barriers to carrying on the partnership could disappear. But it was not reasonably practicable to carry on the partnership business in conformity with the partnership agreement given the membership of the partnership as it existed at any relevant time—whether that is when Tan filed suit, when Tan moved for summary judgment, when the trial court granted Tan's motion, or when the trial court entered judgment.

## C.    *Access to Partnership Records*

As pleaded in the operative complaint, Tan's third cause of action for "accounting" seeks the financial and accounting records Tan demanded under section 16403.[12] We understand Tan's third cause of action to be a statutory cause of

---

[11] Chan states that he has successfully managed CTW's business without Tan's help and can continue to do so without Tan's participation. But for CTW to be a partnership, Tan's passive participation is minimally required to satisfy the membership minimum. (§ 16101, subd. (a)(9).)

[12] Granting summary judgment, the trial court initially acknowledged that section 16403 was the basis for Tan's third cause of action before disposing of the cause of action on the ground that an accounting would be a necessary step in the dissolution. Challenging this ruling, Chan appears to assume that what Tan seeks by this third cause of action is an equitable accounting. We disagree. Because the trial court did not in its order evaluate whether Tan was entitled to relief under section 16403, we accordingly invited supplemental briefing on the proper application of section 16403 on summary judgment. (See Code Civ. Proc., § 437c, subd. (m)(2).)

12

action to enforce this right of access, not an action to compel the determination of his monetary interest.[13]  (Compare § 16405, subd. (b)(2)(A) with *Sass v. Cohen* (2020) 10 Cal.5th 861, 869, *San Pedro Lumber Co. v. Reynolds* (1896) 111 Cal. 588, 596, and 5 Witkin, Cal. Procedure (6th ed. 2025) Pleading, § 815 ["An action for an accounting is equitable in nature"].)  As we will explain, Tan demonstrated his right of access and entitlement to relief.

Section 16403 addresses a partner's right to access the partnership's books and records.  "A partnership shall provide partners and their agents and attorneys access to its books and records.  . . .  The right of access provides the opportunity to inspect and copy books and records during ordinary business hours." (§ 16403, subd. (b).)  Moreover, on demand, each partner and the partnership are obligated to furnish "information concerning the partnership's business and affairs, except to the extent the demand or the information demanded is unreasonable or otherwise improper under the circumstances." (§ 16403, subd. (c)(2).)

First, the undisputed evidence thus demonstrates that Tan demanded access to CTW's books and records under section 16403, subdivision (b) and his request was denied.  Thus, Tan was entitled to relief against CTW under section 16405, subdivision (b)(2)(A).

In his operative complaint, Tan pleaded Chan's noncompliance with a March 2019 demand letter as the basis for his third cause of action.[14]  With his moving papers, Tan

---

[13] To be sure, Tan's goal in seeking dissolution of the partnership is the winding up of the partnership business and ultimately the settlement of accounts and contributions between the partners.  (See § 16807.)  But the relief he seeks through the only claims before us does not encompass that end goal and leaves open the possibility that the partners—once the rights and obligations disputed in this action have been adjudicated—might succeed in avoiding further litigation.

[14] The complaint lacks clarity—it does not specify which subdivision of section 16403 is the alleged basis for his claim for relief.  But Tan's third cause of action

supplied his written demand for access to (1) a statement of the capital accounts for each partner; and (2) all financial and accounting records of the partnership, expressly including "(a) all documents related to the 1031 exchange by which the partnership acquired the Property; (b) all documents related to all efforts . . . to refinance the partnership's loan at any time between 1988 and the present; (c) all K-1 statements for each partner from 1980 through the present; (d) all partnership tax returns from 1980 through the present; (e) all balance sheets prepared for any purpose at any time between January 1, 1980 and the present; (f) all profit and loss statements prepared for any purpose at any time between January 1, 1980 and the present."  In the letter, Tan requested that the documents be sent to his attorney but, if Chan preferred, offered to have his attorney inspect the records at the partnership office and to bring a copy service.

Tan also submitted Chan's responsive letter, in which Chan asserted that he and Wong had provided Tan "all the CTW accounting information and tax return forms he needs" and that defendants thus had "no obligation to waste [their] time to dig up and provide [Tan] with a blanket list of all the old information over the extremely long span of 38 years that he requested without justification."  Chan's letter, like his response to our request for supplemental briefing, takes issue with the reasonableness of Tan's request. But a partner's "right of access . . . to inspect and copy [the partnership's] books and records" is limited only by "ordinary business hours" and the partnership's ability to "impose a reasonable charge . . . for copies of documents furnished."  (§ 16403, subd. (b).)

This undisputed summary judgment evidence demonstrates that Tan demanded access to the records under section 16403, subdivision (b) and Chan refused.  Tan is entitled to enforce his right of access.

_____

names both CTW and Chan, so we infer that it was based on both subdivision (b) (codifying the partnership's duty to "provide . . . access" to its records) and subdivision (c) (codifying a partner's or partnership's duty to "furnish" "information").

Second, to meet his initial burden as to Chan as a partner under section 16403, subdivision (c)(2), we assume it was Tan's burden as the moving party on summary judgment to demonstrate the reasonableness of his demand. But as we have explained, nothing in Tan's request exceeded the scope of "[the partnership's] books and records" under section 16403, subdivision (b). His bare assertion of a statutory right of access is on its face not unreasonable, whether made to CTW or to Chan as the partner controlling the partnership business. We of course recognize the long duration of the partnership could implicate a significant volume of records. But to the extent CTW's books and records omit any of the documents Tan sought to inspect, nothing in Tan's demand purported to compel either defendant to reconstruct them, even though, as the trial court noted, defendants' recordkeeping will inform the settlement of partner accounts and contributions in the winding up of CTW's business.

And even assuming the span of time encompassed by Tan's request or Chan's claim that he and Wong had provided "all the . . . information . . . [Tan] needs" could suggest that Tan's desire to review the documents is impractical, Chan's own declaration demonstrates that Tan had a reasonable basis to exercise his statutory right to review CTW's books and records. (See *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 750–751 [opposition papers may cure deficiency in moving papers].) Chan declared that he had held a majority stake in the partnership since 1988, and had throughout that time handled the partnership accounts. CTW's only business was the management of one single-family rental property in Santa Clara, California. Chan stated that, notwithstanding the provisions of the partnership agreement, under his stewardship CTW had not determined the value of each partners' interest at all, let alone quarterly. Since 2008, Chan had prepared CTW's tax returns himself. It is thus reasonable under section 16403, subdivision (c) for Tan to demand that Chan afford him access to books and records that CTW must make available to any partner under section 16403,

15

subdivision (b). The undisputed summary judgment evidence demonstrates Tan's entitlement to relief against Chan under section 16403, subdivision (c) as well.

Consistent with the foregoing analysis, we understand the judgment in Tan's favor on the third cause of action to require defendants to provide access to all extant partnership documents in a manner consistent with section 16403, subdivisions (b) through (c), and we find no error in the trial court's entry of the judgment.

## D. *Setoff*

When two persons have cross-demands for money "at any . . . time when neither demand was barred by the statute of limitations" and one sues the other, the defendant may "assert in the answer . . . that two [cross-demands for money] are compensated so far as they equal each other." (Code Civ. Proc., § 431.70; see also *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [explaining that equitable setoff defense has been codified as Code Civ. Proc., § 431.70].) In the trial court, defendants argued that this statute was the basis for their "affirmative defense of setoff." Under this theory, Chan would be entitled to a setoff because Tan incurred a debt to their sister between 1984 and 2006, Tan never repaid her, and their sister since reassigned the debt to Chan.[15] As we have explained, we understand Tan's lawsuit to seek only a judicial decree that the partnership is dissolved and that Tan may have access to partnership records, not an equitable accounting or judicial settlement of the partners' accounts or contributions. But assuming Tan's suit may properly be construed as a demand for money, this issue was not properly pleaded.[16]

---

[15] Defendants do not explain how CTW, unlike Chan, might be entitled to a setoff based on a debt reassigned only to Chan.

[16] Tan was not required to disprove defendants' affirmative defenses. (See *Aguilar*, *supra*, 25 Cal.4th at p. 853.)

Asserting the eleventh affirmative defense in their general denial, defendants alleged only their possession of unspecified "legal and equitable rights of offset against any recovery by the plaintiff." Defendants did not allege the factual basis for this defense. This precludes them from raising Chan's alleged right to recover a debt from Tan as a defense to summary judgment. (See *Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 813; *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 507–508.)

Even if we considered defendants' evidence, the limited record before us fails to address whether Chan ever had a claim for money against Tan that was not barred by the statute of limitations.[17] (Cf. Code Civ. Proc., § 431.70 [permitting cross-demands "at any point in time when neither demand was barred by the statute of limitations"].) Wai Yee Chan declared that in 1984 Tan agreed to pay her $200 per month for their mother's living expenses, with Wai Yee Chan to loan Tan $100 per month for an unspecified period at 12 percent interest to be repaid by 1988.[18] But Tan missed many payments between 1984 and their mother's death in 2006.[19] So, according to Chan's evidence, Tan's last breach of the agreement was in 2006. Nothing in defendants' showing

[17] As Tan acknowledged at oral argument, nothing in the judgment precludes Chan from pursuing a claim based on the alleged assignment of the debt, by setoff or otherwise. Nor does our opinion: We resolve only the limited question of whether defendants' setoff affirmative defense precluded summary judgment on the narrow claims Tan pleaded in this action.

[18] Chan submitted a written copy of the agreement and a translation, which apparently substitutes names written in the English alphabet for Chinese characters. Whether or not the written agreement or translation are admissible, Wai Yee Chan stated the terms of the contract in her declaration.

[19] Although Wai Yee Chan declared that the agreement only required Tan to contribute $200 per month, she attached a table showing that the agreed amount increased in 1991, 1994, 2000, 2002, 2004, and 2005. We observe that Chan's assignment indicates that there may be "amendments and addenda" to the 1984 agreement, but none were offered into evidence.

addresses whether Wai Yee Chan's right to collect had lapsed before the unspecified date she assigned the debt to Chan.  (See also Code Civ. Proc., § 360.)  So Chan has not made a prima facie showing that cross-demands for money existed between himself (or CTW) and Tan "at any point in time when neither demand was barred by the statute of limitations."  (Code Civ. Proc., § 431.70; see also *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1341–1342 [discussing four-year statute of limitations for claims on a written contract and continuous accrual].)

### III.   DISPOSITION

The judgment is affirmed.  In the interest of justice, the parties shall bear their own costs.

_____
LIE, J.

WE CONCUR:

_____
GREENWOOD, P. J.

_____
GROVER, J.

*Tan v. Chan et al.*
H051616